580 A.2d 431

The BOROUGH OF MEDIA and PMA Insurance Company, Petitioners,

v.

WORKMEN'S COMPENSATION APPEAL BOARD (DORSEY), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 6, 1990.

Decided Aug. 30, 1990.

574

Clifford Goldstein, Rawle & Henderson, Philadelphia, for petitioners.

Leonard V. Tenaglia, Richard, DiSanti, Hamilton & Gallagher, Media, for respondent.

Before SMITH and PELLEGRINI, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

The Borough of Media (Media) appeals from an order of the Workmen's Compensation Appeal Board (Board) upholding a referee's award of disability benefits to claimant Charles W. Dorsey (Dorsey). We affirm.

Dorsey was employed for seventeen (17) years by Media as a police officer. In early 1985, Dorsey began experiencing severe stomach cramps while on duty and under stress. He believed the cramps to be indigestion.

On July 18, 1985 at 7:09 P.M., Dorsey, while working his usual 3:00 P.M. to 11:00 P.M. shift, responded to a silent burglar alarm. While traveling to the scene he began experiencing abdominal cramps. As he neared the scene, the intensity of his cramps increased. Dorsey found nothing amiss at the scene, and left still feeling the "gas-type" pains.

At 7:42 P.M. the same evening, another alarm went off, signalling a burglary in progress at a different location, and Dorsey responded. Still feeling the severe stomach cramps, Dorsey arrived at the scene of the second alarm and found an open window on the premises. Dorsey then experienced chest pains, started to sweat and felt "just terrible." He drew his weapon and entered the building, only to find one

of the employees still inside.  Dorsey left the scene, but his chest pains and sweating continued throughout the night.

On July 19, 1985, after a sleepless night, Dorsey visited Dr. Garfinkle.  Dr. Garfinkle ran an EKG, which produced an abnormal reading.  Nevertheless, Dorsey returned to work for his usual shift that afternoon, only to be called by Dr. Garfinkle while on duty and advised to "go to the hospital as soon as possible" for tests.  Dorsey left work and has not been on duty since.

On July 22, 1985, Kenneth D. Mendel, M.D. performed a cardiac catherization on Dorsey showing a severe case of coronary artery disease with "significantly impaired function of the left ventricle which is the main pumping chamber of the heart."  Eventually, Dr. Mendel performed coronary artery bypass surgery on Dorsey due to his severely damaged heart muscles and his diagnosed symptoms of severe unstable angina.

Dorsey filed a claim petition under the provisions of The Pennsylvania Workmen's Compensation Act[1] (Act) on November 26, 1985, stating the nature of his injury as "angina attacks which were the predominant reason for bypass surgery," and requesting benefits.

After Media filed a timely answer denying the allegations in Dorsey's claim petition, the referee, in his decision of July 22, 1988, awarded compensation.  In so doing, the referee accepted as credible and competent the testimony of Dr. Mendel and specifically rejected the testimony of Media's expert witness, Dr. John Helwig, as it conflicted with Dr. Mendel's testimony.  The referee also concluded that "claimant sustained a disability as a result of a work-related injury of July 18, 1985, which disability continues until the present time."

On August 18, 1988, Media filed a timely appeal with the Board who affirmed the referee.  Media then filed a timely petition for review with this Court alleging: (1) Dorsey's symptoms of angina do not constitute a compensable "inju-

1.  Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1031.

ry" under the Act, (2) Dorsey's medical expert's testimony concerning work-related causation of a heart attack is equivocal and incompetent and (3) the Board should have remanded this case to the referee as Media's constitutional due process rights were violated when the referee issued his decision without receiving Findings of Fact and Conclusions of Law from Media.

This Court's scope of review is limited to a determination of whether a violation of constitutional rights occurred, an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Mackintosh Hemphill v. Workmen's Compensation Appeal Board (Banicki)*, 116 Pa.Commonwealth Ct. 401, 541 A.2d 1176 (1988). Media argues that the record does not contain substantial evidence to support a finding that Dorsey has ever suffered a work-related heart attack. Media asserts that Dorsey proved only that he suffered "unstable angina pectoris," a mere symptom of his pre-existing heart condition, and that such a symptom is not a compensable injury under the Act.

■ It is well settled law that heart attacks are compensable "injuries" under the Act if they arise in the course of employment and are related thereto. *Roth v. Workmen's Compensation Appeal Board (Armstrong World Industries)*, 128 Pa. Commonwealth Ct. 1, 562 A.2d 950 (1989). Furthermore, the question of whether a heart injury other than a heart attack can constitute a compensable "injury" has also been answered in the affirmative by this Court.

■ We have made it clear that even if the underlying disease which affects claimant's heart is not caused by claimant's employment, a claimant is not disqualified if work-related exertion causes the victim of such conditions to have a heart attack *or suffer other disabling symptoms* which may result from the heart disease. *Penn Cambria School District v. Workmen's Compensation Appeal Board*, 52 Pa.Commonwealth Ct. 244, 415 A.2d 943 (1980);

*Workmen's Compensation Appeal Board v. G. M. & W. Coal Co.*, 29 Pa.Commonwealth Ct. 138, 370 A.2d 386 (1977).

In *Penn Cambria*, we specifically held that although the claimant had a pre-existing heart disease, his angina pains were a compensable injury because they were precipitated by his work and resulted in claimant's disability. 52 Pa. Commonwealth Ct. at 247–48, 415 A.2d at 945. Thus, angina symptoms are an "injury" under the Act if they result in a claimant's disability, and they are a *compensable* "injury" if they arise during and are precipitated by a claimant's work.

■ In the instant case, the record clearly supports that Dorsey's symptoms of angina were the primary purpose for the bypass surgery which contributed to his disability. Dr. Mendel repeatedly testified: "The presence of symptoms was the most potent reason for us to perform the bypass surgery, although as I've mentioned before, it was not the only reason for the bypass surgery to be performed." He further testified that his "diagnosis of Mr. Dorsey's condition ... was unstable angina pectoris for which the so-called vascularization procedure which includes coronary artery bypass surgery are performed as they are felt to represent the safest way of treating patients with this condition."

Furthermore, accepting Dr. Mendel's testimony as credible, the referee found the surgery to be primarily responsible for Dorsey's continued disability. Specifically, he found that Dorsey was totally disabled and continuing to be "medically unready to return to his prior occupation," because he "is continuing to have discomfort in his leg at the site of the harvesting of the veins that were used for the bypass procedure, and additionally has an increase in the ongoing soreness of the chest in the site of the incision."

■ A referee is the sole judge of credibility in cases brought under the Act, and is vested with broad discretion to accept or reject any witness' testimony, including a

medical witness, in whole or in part. *Hines v. Workmen's Compensation Appeal Board*, 64 Pa.Commonwealth Ct. 371, 440 A.2d 664 (1982). The referee did not abuse his discretion when he accepted as credible Dr. Mendel's testimony that the angina symptoms resulted in Dorsey's continuing disability. Hence, in this case, Dorsey's angina symptoms are a disabling "injury" under the Act.

Although the record supports the finding that angina is a disabling "injury," the Act also requires that for an "injury" to be compensable, it must arise in the course of employment and be related causally thereto. *Werner v. Workmen's Compensation Appeal Board (Bernardi Brothers, Inc.)*, 102 Pa.Commonwealth Ct. 463, 518 A.2d 892 (1986). Here, the referee found that Dorsey experienced chest pains while at work on July 18, 1985, as well as on several other prior work occasions, and this finding is clearly supported by substantial evidence in the record.

As to the element of causation, the Act requires unequivocal medical testimony to prove a causal relationship between a claimant's work and his injury when such a relationship is not obvious. *Holy Family College v. Workmen's Compensation Appeal Board (Kycej)*, 84 Pa.Commonwealth Ct. 109, 479 A.2d 24 (1984). A determination of whether a medical expert's testimony is unequivocal is a conclusion of law and as such is fully reviewable by this Court. *Lewis v. Commonwealth*, 508 Pa. 360, 498 A.2d 800 (1985).

In the instant case, Dr. Mendel's testimony concerning the cause of Dorsey's anginal pains is legally unequivocal. Dr. Mendel testified as follows:

Q And what effect, if any, did the presence of the angina attack that you've indicated came at the time of his burglary, when he was responding to the burglary attempt, about twenty-four hours before hospitalization, have on your recommendations that he have a bypass at that precise time?

A    That episode provided the most clarity as to what the cause of the symptoms were. The symptoms over those four to six weeks were not the so-called classic symptoms that a person with angina has and he had some unusual symptoms, although I feel more compatible with angina. That last episode was the first one that I was able to determine from Mr. Dorsey included discomfort in the chest as well as the upper abdomen and the breaking out in sweat that is so classically associated with anginal attacks.

Later the Doctor was questioned about the prior attacks:

Q    Now, you mentioned the details of the last incident when he was responding to the burglary. Would you relate the other incidents that he told you about and when they began and what they consisted of where he had the stressful events?

A    In order to answer that question, I did take the opportunity to review the incident report that Mr. Dorsey had filed and coincident with our initial history of this four to six-week period of this epigastric discomfort, according to most, if not all, of the episodes, there were incident reports that I as a non-police officer would call highly stressful situations that seemed to be the precipitant for those episodes of symptoms that I feel were anginal attacks.

Still later, speaking of the work incidents, the Doctor testified:

A    So that without commenting as to whether he should feel those were stressful, he was relating to me that he was under stress, and as his physician, putting together his historical description of symptoms and the way he was feeling at the time, I concluded those were stressful episodes that were precipitating the symptoms that led us to making the diagnosis and subsequent treatment that he had.

█    We have before ruled that every utterance which a medical witness makes on a medical subject need not be certain, positive, and without reservation, exception or ad-

mission of doubt in order to be unequivocal. It is sufficient that the witness testify that in his professional opinion or that he believes or that he thinks the facts exist. *Philadelphia College of Osteopathic Medicine v. Workmen's Compensation Appeal Board (Lucas)*, 77 Pa.Commonwealth Ct. 202, 465 A.2d 132 (1983). Here, Dr. Mendel expressly stated that it "seemed to be" and that he "concluded" that the stressful work events precipitated Dorsey's anginal attacks. He also stated that he made these conclusions acting "as his (Dorsey's) physician," which is simply another way of saying that they are a matter of his professional opinion. As such, Dr. Mendel's testimony competently establishes the work-related causation of Dorsey's anginal attacks.[2]

In light of our review of the record, we concur with the referee's conclusion that Dorsey "sustained a disability as a result of a work-related injury." Therefore, we need not address Media's second argument that Dr. Mendel's testimony concerning the work-related causation of a heart attack is equivocal. It is unnecessary to review any findings or conclusions concerning the injury of "heart attack" when the injury of "angina symptoms" is so clearly supported in the record by substantial evidence, and its work-related cause is supported by unequivocal medical testimony.[3]

▮ Media's final argument is that the Board should have remanded this case to the referee because he violated their due process rights by making his decision without receiving Media's Findings of Fact and Conclusions of Law. We find this argument to be without merit and believe the

2. Even Media's expert witness, Dr. Helwig, testified that he would advise Dorsey not to return to his work on the police force as "we know that previous incidents of emotional distress did precipitate symptoms of angina."

3. As stated previously, this Court's factual scope of review is limited to a determination of whether the *necessary* findings of fact are supported by substantial evidence. *Bell Telephone Company of Pennsylvania v. Workmen's Compensation Appeal Board (DeMay)*, 87 Pa.Commonwealth Ct. 558, 487 A.2d 1053 (1985).

Board acted within its discretion when it did not remand this case to the referee.

Both Media's and Dorsey's attorneys agree to the facts relevant to this issue. The last evidentiary hearing was held on February 8, 1988. The referee continued the case until July 6, 1988 to allow Media's attorneys ample time to produce vocational expert testimony.

On June 18, 1988, after it became apparent that Media's attorneys were no longer going to produce such expert testimony, Counsel for Dorsey, in a letter to the referee, requested that the scheduled hearing on July 6 be cancelled. At the same time, Counsel for Dorsey submitted their Proposed Findings of Fact, Conclusions of Law and a Legal Memorandum. The referee cancelled the July 6 hearing at that time, and Media's attorneys did not object.

Finally, on July 12, 1988, Media's attorneys sent several defense exhibits to the referee, accompanied by a letter informing him that they would submit their Proposed Findings of Fact, Conclusions of Law, and a Legal Memorandum by August 11, 1988. The referee's decision of July 22, 1988 was rendered without regard to Counsel for Media's findings and conclusions as they were not submitted until August 10, 1988.

34 Pa.Code § 131.61 provides:

(a) The referee may require or the parties may submit proposed findings of fact, conclusions of law and legal briefs or memoranda to the referee for his review and consideration.

(b) All submissions referred to in subsection (a) must be made within the time set by the referee, but except in extraordinary cases, not later than 45 days, following the completion of the evidentiary portion of the case.

Here, the referee did not request nor did he set any timetable for the submission of either party's findings or conclusions.

■ While a referee *may* require the submission of proposed findings and conclusions, he is not required to give

the parties an opportunity to submit such documents. *Sledge v. Workmen's Compensation Appeal Board (Temple University),* 78 Pa.Commonwealth Ct. 380, 467 A.2d 913 (1983). In *Sledge,* as in the instant case, the referee issued his decision after receipt of findings by only one of the parties. We affirmed the referee's order, noting, only as an additional factor in our decision, that the claimant had not even "informed the referee of her desire to submit findings." *Sledge,* 78 Pa.Commonwealth Ct. at 384, 467 A.2d at 916. Media's attorneys point out that, in the instant case, they did inform the referee that they would be submitting findings. However, due to the circumstances of this case, such a distinction cannot prevent *Sledge* from controlling here.

In this case, Media's counsel's letter of July 12 cannot be categorized as an expression of a "desire" to submit findings. In their letter to the referee, Media's attorneys simply *told* the referee that they would submit their findings by August 11. They neither sought nor obtained permission from the referee to create such a late submission date.

Counsel for Media also argue that *Township of Newtown v. Workmen's Compensation Appeal Board (Newby, III),* 74 Pa.Commonwealth Ct. 474, 459 A.2d 1372 (1983) is controlling here. In *Newtown,* we remanded the case to the referee, ordering inclusion of the employer's findings and conclusions and noting that *both* parties *and the referee* had been ignoring the restriction that submissions of findings must occur within 45 days of the completion of the evidentiary process. 74 Pa.Commonwealth Ct. at 478, 459 A.2d at 1374 (emphasis added).

In the instant case, however, Media's attorneys delayed the completion of the evidentiary process, and only they appeared to act in ignorance of 34 Pa.Code § 131.61(b). But for Media's attorneys' request to submit possible vocational expert testimony at a later date, February 8 would have marked the completion of the evidentiary portion of the case. In the end, Media's attorneys could not produce

this testimony, and the referee had to cancel the hearing scheduled for July 6. Furthermore, were it not for Dorsey's attorneys, the unnecessary July 6 hearing may have never been cancelled. It took their June 18 letter to notify the referee that Media's attorneys would no longer be presenting the expert testimony.

Furthermore, Counsel for Media were aware on June 18 that Dorsey's attorneys had submitted their findings, and they agreed that the July 6 meeting should be cancelled at that time, completing the evidentiary portion of the case. Nevertheless, it was not until July 12, twenty-five (25) days later, that they responded by setting their own timetable for submissions, and not until fifty-five (55) days later that they actually submitted their findings and conclusions to the referee. Such behavior flies in the face of 34 Pa.Code § 131.61(b).

As for the Board's behavior in not remanding, our Supreme Court has recently decided that the Board has the power to remand in such cases where a memorandum of law has been erroneously excluded from the record by the referee, and the referee has admitted his inadvertent mistake. *Joseph v. Workmen's Compensation Appeal Board (Delphi Company)*, 522 Pa. 154, 560 A.2d 755 (1989). The Court's decision does not *require* the Board to remand under such circumstances, but merely labels such remands "plainly warranted." *Joseph*, 522 Pa. at 159, 560 A.2d at 757. In the instant case, there is nothing in the record to indicate that the referee's exclusion was inadvertent or erroneous, as was the case in *Joseph*. Hence, the Board acted within its discretion by not remanding.

We therefore affirm the order of the Board dismissing Media's appeal.

PELLEGRINI, J., concurs in the result only.

### ORDER

AND NOW, this 30th day of August, 1990, the order of the Workmen's Compensation Appeal Board in the captioned proceedings is hereby affirmed.