**CAROLINA FREIGHT CARRIERS, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (KISSINGER), Respondent.**

**Gary Kissinger, Petitioner,**

v.

**Workers' Compensation Appeal Board (Carolina Freight Carriers), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 18, 1998.

Decided Jan. 13, 1999.

Michael A. Farrell, Harrisburg, for petitioner.

Ronald T. Tomasko, Harrisburg, for respondent.

Before FRIEDMAN, J., KELLEY, J., and JIULIANTE, Senior Judge.

FRIEDMAN, Judge.

Carolina Freight Carriers (Employer) appeals from an order of the Workers' Com-

---

pensation Appeal Board (WCAB) which reversed the workers' compensation judge's (WCJ) dismissal of Gary Kissinger's (Claimant) Claim Petition and remanded the case to the WCJ for findings on Claimant's average weekly wage and the proper amount of compensation.[1] Claimant has filed a cross-appeal. We reverse and remand.

Claimant worked for Employer as a truck driver since 1987. In March 1992, Employer dispatched one of Claimant's co-workers on a run for which Claimant was eligible. Believing that the co-worker was ineligible for the run, Claimant filed a grievance through his union. After learning that Claimant had filed the grievance, Claimant's supervisors asked Claimant to withdraw the grievance. Claimant replied that someone else filed the grievance on his behalf and that he could not withdraw it. His supervisors then made a remark to Claimant that Claimant interpreted as a threat to his job. (WCJ's Findings of Fact, Nos. 1–2; R.R. at 55a.)

In March 1993, after Claimant completed runs to Philadelphia and New York, Claimant's supervisor contacted Claimant regarding some damage to the roof of the trailer that Claimant used during the runs. Claimant knew nothing about the damage and contacted his union. Employer investigated the matter and ultimately determined that Claimant was not responsible for the damage to the roof of the trailer. (WCJ's Findings of Fact, Nos. 3, 5; R.R. at 23a–24a.)

In May 1993, Employer sent Claimant a letter, alleging that Claimant had been involved in an accident on the George Washington Bridge. The letter stated that Employer was conducting an investigation and that disciplinary action might follow. Because Claimant had not been involved in an accident, he filed a grievance. Claimant later received a letter from Employer stating that the accident could not have been prevented and was not Claimant's fault. (WCJ's Findings of Fact, Nos. 4–5; R.R. at 57a–61a.)

In the winter of 1994, during a severe ice storm, state troopers asked Claimant and other truckers to park their trucks on the side of the road. Claimant and the other truckers were stranded. Claimant remained in his truck for twenty-seven hours and was unable to rest for forty-one hours. Employer relieved the other truckers before relieving Claimant. In addition, Employer arranged for food and coffee for other truckers, but provided none for Claimant. (WCJ's Findings of Fact, No. 6; R.R. at 27a–28a.)

In April 1994, a deer ran into Claimant's truck. When Claimant reported the incident, the dispatcher questioned Claimant's story, suggesting that Claimant ran into the deer. The person who received Claimant's report listened to the story and said, "Do you mean it didn't kill you?" Claimant believed that the individual was being smart with him. (WCJ's Findings of Fact, No. 7; R.R. at 29a–31a.)

On June 1, 1994, Claimant sought medical treatment from Frederick J. Seidel, M.D., because he could not sleep and had nausea and chest pains. Dr. Seidel treated Claimant with blood pressure and nerve medication and referred Claimant to a psychologist named Dr. Riegler for additional treatment. Claimant has not worked since June 1, 1994.[2] (WCJ's Findings of Fact, Nos. 9–12; R.R. at 33a–35a.)

In June 1994, after Claimant had been off work due to illness, he called Employer to find out what he needed to do to return to work. Claimant spoke with Gary Motter, a line haul supervisor for Employer. Motter told Claimant that he needed a letter from his doctor releasing him to return to work. Later that day, Phil Bently, another line haul supervisor, called Claimant to find out whether Claimant was going to return to work. When Claimant indicated that he could not return to work because he did not have a release from his doctor, Bently questioned Claimant about his medical condition,

---

1. An appeal may be taken as of right from an order of a government unit remanding a matter to an administrative agency for execution of the adjudication of the reviewing tribunal in a manner that does not require the exercise of administrative discretion. Pa. R.A.P. 311(f)(1).

2. In Finding of Fact, No. 10, the WCJ found that Claimant worked from March 1992 to June *1993*. However, the record shows clearly that Claimant worked until June *1994*. (R.R. at 34a, 36a, 39a–40a.)

as if Bently doubted that Claimant really was sick. (WCJ's Findings of Fact, No. 8; R.R. at 31a–33a.)

On June 7, 1994, Claimant informed Employer that his medical problems were work-related. (WCJ's Findings of Fact, No. 11; R.R. at 35a.) On July 13, 1994, Employer filed a Notice of Workers' Compensation Denial. (S.R.R. at 2b.)

On September 2, 1994, Claimant filed a Claim Petition, alleging that he became disabled on May 27, 1994 because of stress-related hypertension, chest pain and nerves related to abnormal working conditions. (S.R.R. at 3b–4b; R.R. at 92a.) On September 16, 1994, Claimant filed another Claim Petition indicating that he became disabled on May 27, 1994 *and* on June 1, 1994. (R.R. at 2a, 92a.) On October 7, 1994, Employer filed an answer to the latter petition denying the material allegations of the claim. (R.R. at 4a–5a.)

On January 9, 1995, Claimant filed two penalty petitions, one with an injury date of May 27, 1994 and the other with an injury date of June 1, 1994. Claimant alleged in each petition that Employer failed to comply with Section 406.1 of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §717.1. Specifically, Claimant asserted that Employer did not file its Notice of Workers' Compensation Denial or commence payment of benefits by the twenty-first day after Employer had notice of Claimant's disability. (R.R. at 7a–10a.) On February 16, 1995, Employer filed answers to the penalty petitions, and hearings were held before a WCJ. (R.R. at 11a–12a; *see also* Original Record.)

At the hearings, Claimant presented the deposition testimony of Dr. Seidel. Dr. Seidel opined that Claimant suffered from anxiety disorder, adjustment disorder, high blood pressure and chest pain caused by work-related stress. Dr. Seidel did not feel that Claimant could return to work for Employer. Dr. Seidel hoped that Claimant would be able to return to his pre-injury work but noted that Claimant would always suffer a relapse when he tried to return to work. (WCJ's Findings of Fact, Nos. 20–26.)

The WCJ found Dr. Seidel's testimony to be credible and concluded that Claimant could not return to work because of work-related stress. The WCJ considered this case to be a mental/mental case[3] because Claimant's disabling injuries were the anxiety and adjustment disorders. The WCJ concluded that Claimant did not establish the existence of abnormal working conditions and denied the claim and penalty petitions. (R.R. at 97a–98a.)

Claimant appealed to the WCAB, raising two arguments. First, Claimant argued that the WCJ erred in viewing this as a mental/mental case requiring proof of abnormal working conditions. In the alternative, Claimant argued that he had proved the existence of abnormal working conditions. The WCAB agreed with Claimant that the WCJ erred in treating this as a mental/mental case; the WCAB considered Claimant's claim to be a mental/physical case because of Claimant's physical ailments. As such, Claimant did not have to establish the existence of abnormal working conditions; however, Claimant still had to establish that his physical problems disabled him. *Whiteside v. Workmen's Compensation Appeal Board (Unisys Corp.)*, 168 Pa.Cmwlth.488, 650 A.2d 1202 (Pa.Cmwlth.1994), *appeal denied*, 544 Pa. 650, 664 A.2d 978 (1995). The WCAB concluded that Claimant met this burden because he demonstrated that work-related stress "manifested itself in the various physical ailments." (WCAB op. at 5.) Thus, the WCAB reversed the WCJ's decision and remanded the matter to the WCJ for findings on Claimant's average weekly wage and the proper amount of compensation.

On appeal to this court,[4] Employer argues that the WCAB erred in treating the claim as

---

3. There are three discrete categories of claims involving psychological elements. In a physical/mental case, the physical injury leads directly to the mental injury. In a mental/physical case, a mental injury leads directly to a physical injury. In a mental/mental case, psychological factors related to abnormal working conditions cause a mental injury. *Antus v. Workmen's Compensation Appeal Board (Sawhill Tubular Division, Cyclops Industries, Inc.)*, 155 Pa.Cmwlth. 576, 625 A.2d 760 (Pa.Cmwlth.1993), *aff'd*, 536 Pa. 267, 639 A.2d 20 (1994).

4. Our scope of review is limited to determining whether constitutional rights have been violated,

a mental/physical case. Employer contends that the WCJ correctly determined that Claimant's disabling injuries here were the anxiety and adjustment disorders, not the high blood pressure and chest pains. We agree with Employer.

In a case involving a mental/physical claim, the claimant is exposed to some psychological trauma or stimulus which causes the claimant to suffer a distinct physical injury "that limits the claimant's ability to work." *Whiteside*, 650 A.2d at 1205. In *Whiteside*, the medical experts testified that the claimant's numerous physical ailments were caused by anxiety and stress *and* that the physical ailments "substantially limited [the claimant's] ability to work." *Id.* at 1206. Because the claimant proved that his stress-induced physical ailments disabled him, this court found a compensable mental/physical injury. *Id.*

The question here, then, is whether Claimant has presented expert testimony to establish that his stress-related high blood pressure and chest pains limited his ability to work. Dr. Seidel wrote in an August 12, 1994 report to Claimant's attorney that Claimant "has taken a leave of absence from work because of *emotional problems* which have been diagnosed...as an Adjustment Disorder with Anxious Mood.... I am, therefore, recommending that [Claimant] not return to work...until these [emotional] problems can be resolved." (R.R. at 90a.) (Emphasis added.) In an earlier report, Dr. Seidel stated that, according to Dr. Riegler, Claimant is not "*emotionally* well enough to return to work in the foreseeable future." (R.R. at 89a.) (Emphasis added.)

Indeed, Dr. Seidel treated Claimant for emotional problems, the anxiety and adjustment disorders, and even referred Claimant to a psychologist for treatment. It is

true that the psychological disorders caused Claimant to experience high blood pressure and chest pain. However, when the high blood pressure and chest pain were under control, Claimant still could not return to work. Each time he tried to do so, Claimant's *psychological disorders* would trigger his high blood pressure and chest pain problems. Clearly, Claimant was disabled because of his mental problems, not his physical ailments. Thus, we conclude that this is a mental/mental case and that the WCAB erred in considering it as a mental/physical case.

Accordingly, we reverse. However, we must also remand this case to the WCAB for consideration of Claimant's alternative argument, whether Claimant proved the existence of abnormal working conditions.[5] If, on remand, the WCAB determines that Claimant is entitled to workers' compensation benefits, the WCAB shall also address Claimant's penalty petitions.

### ORDER

AND NOW, this 13th day of January, 1999, the order of the Workers' Compensation Appeal Board (WCAB), dated December 23, 1997, is reversed, and this case is remanded to the WCAB to consider whether Gary Kissinger (Claimant) proved the existence of abnormal working conditions. If, on remand, the WCAB determines that Claimant is entitled to workers' compensation benefits, the WCAB shall also consider Claimant's penalty petitions.

Jurisdiction relinquished.

whether an error of law has been committed or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. §704; *Toborkey v. Workmen's Compensation Appeal Board (H.J.Heinz)*, 655 A.2d 636 (Pa.Cmwlth.), *appeal denied*, 541 Pa. 655, 664 A.2d 544 (1995).

5. In Claimant's cross-appeal, he asserts that the WCAB failed to consider his penalty petitions.

However, at this point in the proceedings it has not been determined that Claimant is entitled to workers' compensation benefits. Therefore, we will not consider Claimant's penalty petitions at this time. *See Jaskiewicz v. Workmen's Compensation Appeal Board (James D. Morrisey, Inc.)*, 651 A.2d 623 (Pa.Cmwlth.1994), *appeal denied*, 541 Pa. 628, 661 A.2d 875 (1995).