**OLD REPUBLIC INSURANCE COMPANY, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (MASCOLO), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 15, 1998.
Decided March 15, 1999.

Terry L.M. Bashline, Pittsburgh, for petitioner.

Michael A. Johnson, Mt. Pleasant, for respondent.

Before DOYLE, J., SMITH, J., and NARICK, Senior Judge.

DOYLE, Judge.

Old Republic Insurance Company (Employer) appeals from an order of the Workers' Compensation Appeal Board (Board) which had affirmed the decision of a Workers' Compensation Judge (WCJ) granting Cathy Mascolo's (Claimant) claim petition.

Claimant began working for Employer in 1978 as a typist. From 1978 to 1988, Claimant received excellent evaluations from her supervisors and, as a result, she received several promotions during that time period. Specifically, Claimant went from a typist position in 1978 to a position of Group Leader/Junior Accountant, which involved the supervision of several employees, by 1989.

In 1989, Employer experienced a dramatic change in employment due to the hiring of new supervisors who attempted to make the company more profitable by increasing employee productivity. As a result, many employees experienced an increase in assignments and job duties and several employees, including Claimant's immediate supervisor, were terminated for poor work performance following their annual performance review. A new supervisor was appointed. Unlike her previous supervisors, Claimant's new supervisor gave her little or no indication as to whether he was satisfied with her job performance. However, Claimant's 1989 evaluation indicated a poor performance, and in January of 1990, Claimant's workload increased substantially. As a result of receiving this evaluation, Claimant became more anxious at work and began experiencing severe headaches, sleep loss, chest pains and an upset stomach. Claimant also became very anxious about the amount of work that she had to finish, theorizing that, if she did not finish all of her work in a timely manner, she would be terminated. As a result of the increased workload and accompanying stress, Claimant unsuccessfully attempted to get a transfer out of her department.

When in March of 1990, Claimant indicated to Employer that she was considering a job offer with another company, she was called in for what Claimant termed "a counseling session," which Claimant characterized as a formal reprimand, after which she gave Employer her two-week notice that she was leaving. Claimant continued working with Employer until April 10, 1990, one week after she gave notice, when Claimant's treating physician, Dr. Kevin Wong, instructed Claimant not to return to work due to acute stress-related gastroenteritis and high blood pressure. Claimant provided Employer with timely notice of her injury, but did not return to work after April 10, 1990. Thereafter, Claimant began working with Westmoreland Hospital as an admissions clerk. Claimant was subsequently promoted to a position in the billing department. Both positions at the hospital were on a part-time basis.

On April 27, 1990, Employer issued a notice of compensation denial, stating, *inter alia*, that Claimant's injury and disability were not work related.

On February 14, 1991, Claimant filed a claim petition, alleging that, due to "repetitive minitrauma events" from November 1, 1989, to April 9, 1990, she suffered "Gastroenteritis–Stress Related [1] disability." On March 20, 1991, Employer filed a timely answer, denying the allegations contained in the petition, and hearings were scheduled before a WCJ.

During the hearings, Claimant testified to the above events. Specifically, Claimant testified that, as a result of the increase in work accompanying the upheaval in the company, Claimant began to experience headaches, pain in her chest and a feeling that her stomach was in knots. She did not, however, indicate that any physical problems prevented her from going to work and performing her duties or that any physical problems forced her to end her employment with Employer; rather her chief concern was stress, and the main reason that she offered for leaving was the fact that Employer no longer wanted her there and was forcing her out.[2]

Claimant testified that she is currently working for Westmoreland Hospital in the patient account department. In this capacity, she works between two and four days a week at a rate of $7.97 per hour with a guarantee of at least 16 hours per week.

Additionally, Claimant presented the testimony of Lettie Bisping and Sally Whitehead. Bisping was the secretary to Employer's assistant vice president, George Wilson. She testified that, following the arrival of the new executive vice president, Mr. Serrecchia, there was significant "crossing over" within Claimant's department, in that employees were required to do new additional job duties for which they received little, if any, training. Bisping testified that, prior to 1990, all employees were evaluated based upon their performance over the entire previous year. However, beginning in November of 1989, Bisping testified that all employees were evaluated based upon their adaptation to the new working conditions. Furthermore, Bisping stated that Claimant had, in fact, had her workload increased dramatically.

Whitehead, who was a cashier for Employer and was trained by Claimant, testified that Claimant's workload increased dramatically beginning in 1989 and that both she and Claimant were asked to do work for which they received little, if any, training and for which they had no experience. Whitehead also stated her belief that Claimant was given more work to perform than other members of the office.

Claimant also presented the deposition testimony of her treating physician, Dr. Kevin Wong, M.D. On direct examination by Claimant's attorney, Dr. Wong testified as follows:

Q: With that in mind, Doctor, would you please tell us about the first occasion that you had to see [Claimant], on May 10th I believe you testified, 1990?

A: ... her complaint at that time was being nervous, under stress, anxiety at

---

1. Gastroenteritis refers to an inflammation of the mucous membrane of both the stomach and the intestine.

2. We note that, one week prior to leaving work permanently with Employer, Claimant had given her two-week notice after receiving her unsatisfactory evaluation.

work for the past two to three months.... Said the stress had actually been getting worse over the past six months. She is feeling that she was being forced out of her present job and that she was very upset because she was going to have to start at the low end of the totem pole in hospital admissions....

Q: What is the clinical name for, if you had any clinical name, for the condition that the history reveals at this point, Doctor?

A: I would say acute stress reaction.

. . . .

Q: Based upon this patient as she reported to you and your evaluation of her, did you make any recommendation as to whether she should continue or return to work, or did you remove her from work at that time?

A: At this point in time she was tearful, shaking in the office. And clearly with that condition I didn't think it would be helpful for her to return to what she was doing.... Again with blood pressure being elevated, it was of concern, because her pressure over the past two years or three, or actually seven years that we had them documented in our office practice had never been that high.

. . . .

Q: Did you, beside the tranquilizer, recommend any further testing, or what was your approach to treatment at this time, Doctor?

A: Well, at that point with her being this upset, [I] felt that clearly she had to be removed from the situation that she was in. Clearly, you know, that would have been detrimental to her health to stay in the[re] with pressures that high. **At the same, you know, it really appeared to be more stress, and that is why we did not do extensive workups for high blood pressure or anything else.**

. . . .

But as I said in her case her pressure did fluctuate significantly, and that is the only physical finding we have that substantiates this. We did not feel that it was significant to have her get an entire workup of her GI tract.

(Deposition of Dr. Kevin Wong, M.D. at 9–13, 17; Reproduced Record at 163a–67a, 171a.) (Emphasis added.) Dr. Wong did not indicate that Claimant was unable to perform her time-of-injury job because of stomach problems or other physical ailments. Although he did note that Claimant experienced episodes of diarrhea, he identified Claimant's main complaints as stress and anxiety. In his opinion, Claimant would suffer additional stress reactions if she returned to work with Employer, and, for that reason, he opined that she was not capable of returning to work with Employer.

In response, Employer presented the deposition testimony of Doctor Jess Amchin, M.D., a board-certified psychiatrist, who conducted an independent psychiatric evaluation of Claimant on February 27, 1992. Based on his evaluation, Dr. Amchin concluded that Claimant's physical symptoms were causally related to her increased stress at work; however, he did not opine as to whether the symptoms were merely manifestations of the stress, but he did note that Claimant's physical symptoms became most severe following receipt of her unsatisfactory evaluation from Employer. Dr. Amchin also conceded that, if Claimant returned to work with Employer, her physical symptoms would most likely recur.

Employer also presented the testimony of George Wilson, the Assistant Vice President and Controller for Employer, and David Kostenbader, Employer's Assistant Controller. Both testified that Claimant was not asked to perform more tasks than other employees in the department. Also, both denied that Employer attempted to "force out" Claimant or that Employer no longer wanted Claimant to continue to work there. Rather each characterized Claimant as an employee who was sensitive to criticism and needed to be handled with "kid glove care." Finally, each denied that Claimant had ever approached them concerning the possibility of a transfer to a different department.

By a decision and order circulated on March 25, 1994, the WCJ denied Claimant's claim petition, concluding that Claimant failed to meet her burden of proof. The WCJ found that Claimant was not "forced out" nor was she subject to an increased workload any greater than other employees in her department. The WCJ further concluded that Claimant's claim was a so-called "mental/mental" case, which required Claimant to establish that she was subjected to abnormal working conditions. The WCJ concluded that Claimant failed to carry this burden. In reaching this conclusion, the WCJ rejected the testimony of Claimant, Lettie Bisping and Sally Whitehead and also rejected the opinions of the two Doctors insofar as they concluded that Claimant's injury was work-related. The basis for rejecting both medical opinions was each doctors' reliance on the history given to them by Claimant, which the WCJ found not credible.

Claimant appealed to the Board, asserting that the WCJ applied the wrong burden of proof to her case. The Board agreed and reversed the WCJ's decision. Specifically, the Board, citing our decision in *Whiteside v. Workmen's Compensation Appeal Board (Unisys Corp.)*, 168 Pa.Cmwlth. 488, 650 A.2d 1202 (1994), *petition for allowance of appeal denied*, 544 Pa. 650, 564 A.2d 978 (1995), concluded that, because Claimant experienced a psychological stimulus which caused a *physical* injury, "the Claimant's burden of proof is the normal one in a workmen's compensation case, namely the burden of proving by unequivocal medical testimony that her physical condition was caused by her work environment." (Board Opinion, 5/31/96, at 5.) Accordingly, the Board remanded the case to the WCJ to consider the evidence utilizing the correct burden of proof. In a dissenting opinion, Commissioner Urling opined that the *Whiteside* issue need not be reached because Claimant's only physical injuries were manifestations of the psychological injury which would disappear when the stress was removed. Accordingly, Commissioner Urling concluded that

[t]he effect of allowing the physical manifestation of a stress condition to move a claim from a mental/mental to a mental/physical condition will effectively eliminate mental/mental claims if the claimant has a medical expert who will testify that the Claimant has an upset stomach (gastroenteritis).

(Dissenting Opinion at 2.) In conclusion, Commissioner Urling noted that, in *Martin v. Ketchum, Inc.*, 523 Pa. 509, 568 A.2d 159 (1990), our Supreme Court declined to consider a self-inflicted gun shot wound a mental-physical injury. Therefore, if the gun shot wound, which was brought on by psychological stimulus was not a mental/physical injury, Commissioner Urling questioned how Claimant's gastroenteritis could be construed as a physical injury.

On remand, the WCJ concluded that Claimant had satisfied her burden of proof under the mental/physical standard and, thus, was entitled to benefits. The WCJ made the following finding of fact:

THIRTEENTH: After review of all testimony presented by both parties, this [WCJ] is constrained to find all witnesses credible in that they outline a situation where the claimant has been subjected to stress-related situations causing physical injuries because of her working conditions. All the medical and psychiatric testimony substantiates a work-related physical injury to the claimant resulting from the stressful job conditions required by the employer['s] desire to improve results in productivity in the claimant's area of employment.

(WCJ's Opinion, 1/7/97, at 7.)

Employer appealed to the Board arguing that the WCJ erred in finding a work-related injury; that the WCJ mistakenly believed that the Board's remand order constrained him to conclude that a compensable injury occurred; and that the WCJ erred as a matter of law in failing to require Claimant to establish a continuing disability. The Board affirmed the WCJ's decision, and, in doing so, the Board concluded that Claimant had met her burden of proof under the "mental/physical" standard, that the WCJ recognized that he was only to apply a different burden on remand and not required to reach a different result unless the evidence required it. Additionally, the Board concluded

that substantial evidence existed to support the WCJ's conclusion that Claimant suffered a continuing compensable injury, noting that Dr. Wong's testimony established that Claimant could not perform her time of injury job or any similar position because she would risk aggravating her condition. This appeal by Employer ensued.

On appeal,[3] Employer presents three issues for our review: (1) whether the Board erred in remanding the case to be considered under the mental/physical standard; (2) whether the WCJ erred in finding that he was constrained to find Claimant's witnesses credible; and (3) whether Claimant established a continuing disability.

■■■ It is, of course, well settled that a Claimant bears the burden of establishing entitlement to benefits and establishing all the elements necessary to support an award, including the fact that he suffered an injury which was caused by his work. *Bennett v. Workmen's Compensation Appeal Board (Fort LeBeouf School District)*, 157 Pa. Cmwlth. 124, 629 A.2d 208 (1993). In *Whiteside*, we established that, in cases such as this where the asserted injury arises from psychological stimuli, such as stress, there are two types of possible injuries which a claimant may suffer. A claimant may experience psychological stimulus which causes a separate physical injury (mental/physical injury). In such a case, the claimant need only establish that the psychological stimulus caused the resulting physical injury. *Whiteside*. Classic examples of mental/physical injuries include a heart attack, *Washington Food Specialties, Inc. v. Workmen's Compensation Appeal Board (Britko)*, 144 Pa. Cmwlth. 226, 601 A.2d 439 (1991), *petition for allowance of appeal denied*, 533 Pa. 603, 617 A.2d 1277 (1992); ischemic heart condition, *Borough of Media v. Workmen's Compensation Appeal Board (Dorsey)*, 134 Pa.Cmwlth. 573, 580 A.2d 431 (1990); angina, *Steinle v. Workmen's Compensation Appeal Board*, 38 Pa.Cmwlth. 241, 393 A.2d 503 (1978); and colitis, *Breen v. Commonwealth*, 52 Pa.

Cmwlth. 41, 415 A.2d 148 (1980). Based upon the above cases, it is clear that mental/physical injuries have two common elements: (1) a psychological stimulus which causes a physical injury which continues after the psychological stimulus is removed; and (2) a disability, *i.e.*, loss of earning power, caused by the **physical** condition, rather than by the psychological stimulus; in other words, the claimant cannot perform his/her pre-injury job because of the resulting physical injury which continues after the psychological stimulus is removed.

■■■ Alternatively, if a claimant is exposed to psychological stimulus and subsequently develops a psychological or nervous condition (mental/mental injury), a claimant bears the heavier burden of not only establishing that the stimulus caused the resulting mental condition, but also that he was exposed to abnormal working conditions. *Whiteside*. The reason for this heightened burden of proof is the lack of any outward manifestation or other objective identification of the injury. *Id.* And, it is now well settled that the question of what constitutes abnormal working conditions is a mixed question of law and fact which is reviewable by this Court. *Jeanes Hospital v. Workmen's Compensation Appeal Board (Miller)*, 141 Pa. Cmwlth. 308, 595 A.2d 725 (1991), *petition for allowance of appeal denied*, 532 Pa. 648, 614 A.2d 1144 (1992).

■■■ As with all workers' compensation cases, determinations of the credibility of any witness, even a medical witness, are solely for the WCJ, as fact-finder. Thus, the WCJ may accept or reject part or all of any testimony, including that of a medical witness. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703 (Pa.Cmwlth.1995). Accordingly, this Court will not reweigh the evidence presented to the WCJ, absent an error of law. *Id.*

■■■ Employer first argues that the Board erred in remanding the case for consideration under the mental/physical standard.

---

**3.** Our standard of review is limited to determining whether necessary findings of fact are supported by substantial evidence, whether constitutional rights were violated, or whether an error of law was committed. *Morey v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.)*, 684 A.2d 673 (Pa.Cmwlth.1996).

We agree. As noted above, the line of cases designated as mental/physical injuries involve a physical injury, brought on by a mental stimulus. The physical injury, however, is what causes the disability, *i.e.*, the claimant cannot perform his time-of-injury job because of some **physical** ailment brought on by the mental stimulus.

A careful review of the record reveals that Claimant suffered from no such physical ailment, but rather the reason that she ceased working, and, perhaps more specifically, the reason that Dr. Wong recommended that she cease working for Employer, was not because she had a physical injury such as gastroentiritis, but rather because he feared that she could not cope with the stress brought on by her job. Moreover, Dr. Wong did not indicate that any significant physical manifestations of the stress remained after Claimant ceased working for Employer nor that any physical condition existed independent of the stress. Therefore, there is not substantial evidence to support a finding that *any* **physical** problem or injury, separate and distinct from the stress that Claimant experienced, prevented her from performing her time-of-injury job. Rather, it appears from the record that Claimant did not perform her position with Employer because of stress, and she left because she felt that she was no longer wanted there. Accordingly, we conclude that the Board erred in concluding that the Claimant's injury was a mental/physical injury and our inquiry now focuses on whether Claimant established that her working conditions were abnormal.[4] Therefore, our inquiry turns to whether Claimant established that she was subjected to abnormal working conditions.

As stated above, the question of whether a claimant has been exposed to abnormal working conditions is a mixed question of law and fact and is fully reviewable by this Court. *Jeanes Hospital.* Prior to the Board erroneously remanding the case to be considered under the mental/physical standard, the WCJ considered the evidence before him and determined that Claimant did not establish that she was subject to abnormal working conditions. Based upon our independent review of the record, and the fact that, following the WCJ's initial determination, no new evidence was submitted, we must agree, and therefore conclude, as the WCJ did, that Claimant did not establish that she was exposed to abnormal working conditions.

Because of our disposition of Employer's initial argument, we do not reach Employer's other arguments concerning whether Claimant satisfied her burden of proof under the mental/physical standard and whether Claimant demonstrated a continuing disability.

Reversed.

### ORDER

**NOW**, March 15, 1999, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby reversed.

---

**4.** We believe that this conclusion is in line with our Supreme Court's recent decision in *Metropolitan Edison Co. v. Workmen's Compensation Appeal Board (Werner)*, 553 Pa. 177, 718 A.2d 759 (1998), in which the Court stated as follows:

> Although it is undisputed that [the claimant] suffered from headaches, diarrhea and sleep loss, triggered by exposure to sunlight after working the midnight shift, the inquiry must focus upon whether the cause or stimulus of the physical complaints is an injury. Otherwise, all physical complaints would be considered injuries—an approach that has been rejected in psychic injury cases where the claimant suffered from physical ailments, as well as psychic problems in response to normal working conditions

*Id.* at ——, 718 A.2d at 764.