Robert PRESTA, Petitioner,

v.

WORKERS' COMPENSATION AP-
PEAL BOARD (SOUTHEASTERN
PENNSYLVANIA TRANSPORTA-
TION AUTHORITY), Respondent.

Commonwealth Court of Pennsylvania.

Argued March 10, 1999.

Decided June 29, 1999.

Gerard K. Schrom, Media, for petitioner.

Peter J. Weber, Philadelphia, for respondent.

Before COLINS, President Judge, and DOYLE, J., SMITH, J., PELLEGRINI, J., FRIEDMAN, J., FLAHERTY, J., and LEADBETTER, J.

DOYLE, Judge.

Robert Presta (Claimant) appeals from an order of the Workers' Compensation Appeal Board (Board) affirming an order of a Workers' Compensation Judge (WCJ) which had denied his claim petition.

Claimant worked for the Southeastern Pennsylvania Transit Authority (Employer) from 1984 to 1986 as a conductor, left work with Employer and then rejoined Employer in 1988 as a trolley driver. Shortly after rejoining Employer, Claimant was promoted to the position of controller.[1]

Prior to 1994, Employer had an older control system in place, which did not require the controller to perform as many functions. In 1994, however, Employer installed a new control system which required Claimant to monitor the movements of Employer's vehicles more closely. One of Claimant's duties as a controller was to ensure that trolleys were switched onto the appropriate track. Although under the old system, the trolley operators would manually throw the switch so as to switch tracks, under the new system, the controllers switched tracks from the control room. To allow the controller to safely switch trolleys, the new system had a dis-

---

1. Claimant testified that a controller essentially monitors and controls the movements of Employer's busses, trolleys and trains.

play board which tracked the movements of trolleys in Claimant's district. However, this board malfunctioned and sometimes indicated that a trolley was on a specific track when, in fact, it was not, and also displayed some "phantom" trolleys which did not exist but were indicated by the display board. Obviously, this presented a problem because, if Claimant did not know where trolleys actually were, he could order two trolleys onto the same track which could possibly cause a collision. As a result, after Employer installed the new system, Claimant became more and more apprehensive that a collision or other accident would occur because of a system malfunction. He began to have trouble sleeping, had headaches, abdominal cramps and heart pounding. Due to the stress created by Claimant's working environment, he stopped working on January 4, 1995.

On March 20, 1995, Claimant filed a claim petition, alleging that, as of January 4, 1995, he was totally disabled due to a stress-related injury which he described as "unable to think clearly, panicky, trembling, palpitations and sweats, nightmares due to work related stress." (Claim Petition at 1.) Employer filed a timely answer denying the allegations and hearings were scheduled before a WCJ.

During the hearings, Claimant testified to the above events and, further, that following the installation of the new control system, he sometimes would be required to work eight to sixteen hour shifts without another controller with him. Claimant stated that sometimes he could not get up to eat or even go to the bathroom because nobody else would be there to monitor the trolleys. Claimant indicated that this would sometimes occur during peak travel hours.

In addition, Claimant presented the testimony of Dr. Saul Kadish, Claimant's psychiatrist. Dr. Kadish testified that Claimant suffered from an adjustment disorder with mixed emotions and conduct, and he also noted that Claimant displayed symptoms of post-traumatic stress disorder. Dr. Kadish explained that Claimant "relives" or "reexperiences" the stress associated with his fear that the problems with the new controlling system would cause a collision or derailment. When Claimant relives these feelings, he experiences physical symptoms such as abdominal cramps, headaches, sweats and a light-headed feeling. Dr. Kadish did not indicate, however, that the physical symptoms prevented Claimant from performing his job; rather, he indicated that it was the stressors at work which prevented Claimant from returning to his position.

In response, Employer presented the deposition testimony of Dr. Timothy Michals, a psychiatrist who examined Claimant on September 11, 1995. Based upon his examination, Dr. Michals opined that Claimant suffers from an adjustment disorder with anxiety and depressive features. Dr. Michals further opined that, based on his examination of Claimant, and the history provided by Claimant, Claimant's reaction to the work stress was subjective, and he found nothing unusual about Claimant's work history. He testified that Claimant could return to work with Employer in a different position so that he could again adjust to the working conditions and eventually return to the controller position.

On January 30, 1997, the WCJ circulated a decision and order denying Claimant's claim petition. Specifically, the WCJ concluded that Claimant sought benefits for a "mental/mental"[2] injury and that Claimant

2. When a claimant avers that he has suffered an injury caused by a psychological stimulus, there are two types of injuries which could occur. *Whiteside v. Workmen's Compensation Appeal Board (Unisys Corp.)*, 168 Pa.Cmwlth. 488, 650 A.2d 1202 (1994), *petition for allow-* *ance of appeal denied*, 544 Pa. 650, 664 A.2d 978 (1995). The first is the "mental/physical" injury in which the psychological stimulus causes a separate physical condition. The burden of proof in a mental/physical case is the normal burden of proof. Where, howev-

had established that a psychiatric disability prevented him from continuing to work with Employer. The WCJ further found, however, that Claimant failed to establish that he was subjected to abnormal working conditions, and, therefore, the WCJ denied the claim petition on that basis. Claimant appealed to the Board, which affirmed the WCJ's decision, and Claimant appealed to this Court.

On September 16, 1998, this Court issued a memorandum opinion reversing the decision of the Board and concluding that Claimant's injury fit within the "mental/physical" category and that Claimant met his burden of proof under that standard. On September 30, 1998, however, our Supreme Court issued its decision in *Metropolitan Edison Co. v. Workmen's Compensation Appeal Board*, 553 Pa. 177, 718 A.2d 759 (1998), which further examined the components of psychological injuries which a claimant might experience. Based upon the potential impact of *Metropolitan Edison*, not only on this case, but on other similar cases, we granted Employer's application for reargument and withdrew our previously filed opinion and order on November 25, 1998, and scheduled the case for consideration before the Court en banc.

In *Metropolitan Edison*, the claimant was attempting to receive compensation for what his medical expert identified as "shift work maladaption syndrome" which was caused by an inability to adapt to shift work and caused the onset of several physical symptoms including headaches, diarrhea and digestive problems. In rejecting shift work maladaption syndrome as an "injury" under the Workers' Compensation Act (Act),[3] the Supreme Court stated that a Claimant must establish that the cause of the stimulus underlying the injury must be

either a condition of an employer's facility or the claimant's job duties. In addition, the Court noted that the cause and effect of an injury must not be confused when evaluating its classification. Specifically, the Court held that the effect of requiring an employee to work an eight-hour shift was not caused by his work or the employer's facility and was, therefore, not a compensable injury under the Act.

As an initial observation, in the present case, unlike *Metropolitan Edison*, there is no question that the stress which Claimant experienced was caused by Employer's working conditions, as well as Claimant's responsibilities at work. Therefore, unlike the claimant in *Metropolitan Edison*, Presta has established a connection between his work and his condition. This conclusion, however, does not end our inquiry.

Recently, two panels of this Court have had the occasion to examine further the requirements of a mental/physical injury and the impact of *Metropolitan Edison*. In *Carolina Freight Carriers v. Workers' Compensation Appeal Board (Kissinger)*, 723 A.2d 739 (Pa.Cmwlth.1999), the claimant was a truck driver who sought benefits for work-related stress which caused hypertension, chest pain and a general nervous condition. During the hearings before the WCJ, the claimant presented the medical testimony of Dr. Frederick Seidel, a psychiatrist. Dr. Seidel testified that the claimant would never be able to return to his pre-injury position because he would suffer a relapse. The WCJ classified the claimant's injury as a mental/mental injury and denied his claim petition. The Board reversed, concluding that the alleged injury was a mental/physical injury and that the claimant had satisfied his burden of proof, and the employer appealed.

---

er, a psychological stimulus causes a psychological disorder, *i.e.*, a "mental/mental" case, a claimant, in addition to the burden of proof under a mental/physical claim, must also establish that he was exposed to abnormal working conditions. *Whiteside.* The reason

for this heightened burden is the absence of any outward manifestation or objective identification of the injury. *Id.*

**3.** Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4.

On appeal, this Court reversed the Board's decision and concluded that the injury was a mental/mental one. We stated as follows:

It is true that the psychological disorders caused Claimant to experience high blood pressure and chest pain. However, when the high blood pressure and chest pain were under control, Claimant still could not return to work. Each time he tried to do so, Claimant's *psychological disorders* would trigger his high blood pressure and chest pain problems. Clearly, Claimant was disabled because of his mental problems, not his physical ailments.

*Carolina Freight,* 723 A.2d at 742 (emphasis in original).

Similarly, in *Old Republic Insurance Co. v. Workers' Compensation Appeal Board (Mascolo),* 726 A.2d 444 (Pa.Cmwlth.1999), the claimant was a group leader for an insurance company, and she experienced a dramatic change in her work due to a reorganization of the company. As a result of the increase in work and the accompanying stress, the claimant began to develop gastroenteritis and left· work soon after receiving an unsatisfactory evaluation from her employer. During the hearings, Claimant's physician testified that the claimant's chief complaint was stress, and he stated that the reason that the claimant could not return to work was not the gastroenteritis, but was the stress that the claimant had experienced. The WCJ initially classified the claim as a mental/mental case but, following a remand from the Board, he reclassified the claim as a mental/physical case and concluded that the claimant had satisfied her burden of proof, and the Board affirmed that decision.

On appeal to this Court, we reversed the Board and concluded that the claimant's injury was a mental/mental injury. In doing so, we concluded that a mental/physical claim has two elements: (1) a psychological stimulus which causes a physical injury which continues after the psychological stimulus is removed; and (2) a loss of earning power, *i.e.,* disability caused by the physical condition in that the claimant cannot perform his or her pre-injury job because of the physical condition. *Old Republic.*

In the present case, like *Old Republic* and *Carolina Freight,* we do not believe that Claimant has presented any evidence that the physical symptoms that he experienced were anything other than manifestations of the stress which he experienced at work, *i.e.,* he failed to demonstrate that, absent the stress, the physical symptoms would remain and prevent him from performing his time-of-injury position. As in *Carolina Freight,* we find it significant that Claimant was receiving treatment exclusively for the general anxiety and stress produced by his work and that Claimant did not seek medical attention for his physical complaints. Likewise, we agree with the Board and the WCJ that this claim falls within the purview of a mental/mental claim.

Although Claimant does not argue alternatively that he satisfied his burden of proving that he was subject to abnormal working conditions, our review of the record reveals that there was substantial evidence to support the WCJ's finding and conclusion that Claimant was not exposed to abnormal working conditions.

Order affirmed.

## ORDER

**NOW,** June 29, 1999, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed.

FRIEDMAN, Judge, dissenting.

I respectfully dissent. Unlike the majority, I believe that this is a mental/physical case and that, based on the findings of fact made by the workers' compensation judge (WCJ), Robert Presta (Claimant) is entitled to workers' compensation benefits. Accordingly, I would reverse.

In a mental/physical case, the claimant is exposed to some psychological trauma or stimulus, which, in turn, causes the claimant to suffer a distinct physical injury. *Whiteside v. Workmen's Compensation Appeal Board (Unisys Corp.),* 168 Pa. Cmwlth. 488, 650 A.2d 1202 (1994). "[T]he stimulus may be a brief, sudden shock or a prolonged stimulus such as high stress or anxiety that results into a distinct and identifiable physical injury that limits the claimant's ability to work." *Id.* at 1205. However, if the claimant's physical complaints are caused by normal working conditions, then there is no compensable injury. *Metropolitan Edison Company v. Workmen's Compensation Appeal Board,* 553 Pa. 177, 718 A.2d 759 (1998). Here, Claimant's physical complaints were *not* caused by normal working conditions.[1]

The stimulus for Claimant's physical complaints in this case was abnormally high stress and anxiety from working for prolonged periods of time without the assistance of another controller at peak commuter hours with Southeastern Pennsylvania Transit Authority's (Employer) malfunctioning computer system. The WCJ found that controllers normally work in pairs; one controller covers for the other when it is necessary "to go to the restroom or to get a drink." (WCJ's Findings of Fact, No. 8.) However, Claimant testified credibly that he often worked alone, even during peak commuter hours, and had no opportunity "to take a break or to use the restroom." (WCJ's Findings of Fact, Nos. 4, 9.)

Moreover, the computer malfunctions that occurred while Claimant was at work by himself cannot be considered "normal." Employer's computerized control system displayed "phantom" trolleys and failed to display trolleys that actually existed. Such malfunctions created dangerous situations and produced real fear that there was no control over the system at all. When the computer experts eradicate these major "bugs" from the system and the system becomes stabilized, then controllers will be able to work under "normal" conditions.

Having determined that Claimant's physical complaints were not caused by normal working conditions, it is still necessary to address whether Claimant's physical injury continued after he left the controller job and whether his physical symptoms limited his ability to perform the controller job. *See Old Republic Insurance Co. v. Workers' Compensation Appeal Board (Mascolo),* 726 A.2d 444 (Pa.Cmwlth.1999); *Carolina Freight Carriers v. Workers' Compensation Appeal Board (Kissinger),* 723 A.2d 739 (Pa. Cmwlth.1999).

The majority states that Claimant "failed to demonstrate that, absent the stress, the physical symptoms would remain and prevent him from performing his time-of-injury position." (Majority op. at 686.) I disagree. Saul Kadish, D.O., credibly testified that Claimant had symptoms of post-traumatic stress disorder and that Claimant would re-experience certain physical symptoms whenever he was exposed to anything that reminded him of the controller job. (WCJ's Findings of Fact, Nos. 5, 10.) Moreover, Claimant credibly testified that his physical problems, the nausea, sleeplessness and persistent headaches, prevented him from working in the controller position. (WCJ's Findings of Fact, Nos. 4, 9.) Thus, Claimant *did* demonstrate that his physical symptoms continued after he left the con-

1. The majority does not address whether Claimant's physical complaints were caused by normal working conditions, sudden shock or prolonged periods of high stress and anxiety. (*See* Majority op. at 686.) The majority simply concludes that, "unlike the claimant in *Metropolitan Edison,* [Claimant] has established a connection between his work and his condition." (Majority op. at 685.) Because I conclude that Claimant was exposed to abnormal working conditions, Claimant would be entitled to workers' compensation benefits even if this were a mental/mental case and not a mental/physical case.

troller job and that those physical symptoms prevented him from working in that job.

Accordingly, I would reverse.

Judge SMITH joins in the dissent.