650 A.2d 114

**SOMERSET WELDING AND STEEL and Home Insurance Company, Petitioners,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (LEE), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 27, 1994.

Decided Oct. 11, 1994.

Reargument Denied Dec. 20, 1994.

Reconsideration Granted for Limited Purpose Dec. 20, 1994.

Edward C. O'Hearn, for petitioners.

Jon A. Barkman, for respondents.

Before SMITH, and FRIEDMAN, JJ., and NARICK, Senior Judge.

FRIEDMAN, Judge.

Somerset Welding and Steel (Employer) and Home Insurance Company (collectively, Petitioners) appeal from a decision of the Workmen's Compensation Appeal Board (Board)

affirming a referee's [1] grant of benefits to Robert G. Lee, Jr. (Claimant) from March 27, 1991 through February 6, 1992 and reversing the referee's termination of those benefits as of February 7, 1992.

On March 26, 1991, while working for Employer, Claimant slipped as he put together a water separator tank. Consequently, Claimant experienced pain in his back as well as burning pain in the back of his left leg.[2] (Referee's Finding of Fact, No. 4.) On March 27, 1991, Claimant's wife informed Employer of the incident and told Employer that Claimant would be absent from work that day due to a doctor's appointment. (Referee's Findings of Fact, Nos. 5 and 17.) The next day, Employer terminated Claimant's employment for continually disregarding company policy with regard to procedures for reporting off work. (Referee's Findings of Fact, Nos. 6, 16 and 21.)

On May 15, 1991, Claimant filed a claim petition for workers' compensation benefits, indicating that he suffered a herniated disc from the March 26th incident. Petitioners subsequently filed an answer to that petition generally denying Claimant's allegations. At the evidentiary hearing, Claimant presented the deposition testimony of two physicians, Dr. Mark F. Yaros and Dr. Howard Gendell. Dr. Yaros testified that he examined Claimant on March 27, 1991. At that time, Claimant gave Dr. Yaros a "history" of left back pain radiating from Claimant's upper lumbar spine through the hip and lateral aspect of his left leg to his knee and told Dr. Yaros that he had been experiencing back pain for two months. During that initial examination, Claimant did not inform Dr. Yaros of a specific incident precipitating the pain; however, Dr. Yaros stated that the Claimant's symptoms and complaints were definitely different from any previous complaints. Dr. Yaros

1. Referees are now called Workers' Compensation Judges under the new amendments to the Workers' Compensation Act effective August 31, 1993. Because this case was before the referee prior to the effective date of the amendments, however, we will refer to her as Referee and not as Workers' Compensation Judge.

2. The referee noted that Claimant had experienced back pain one year prior to this incident.

deemed Claimant totally disabled as of April 1, 1991, the date on which diagnostic tests confirmed Claimant was suffering from a herniated disc.

Dr. Gendell testified that based on a myelogram, MRI, and examination results, Claimant suffered from low back and leg pain consistent with a herniated disc. Furthermore, Dr. Gendell stated that within a reasonable degree of medical certainty, the incident on March 26, 1991 caused a new injury or aggravated Claimant's preexisting condition. Dr. Gendell, however, was unable to testify that Claimant continued to have a disability after February 6, 1992 and deferred such an opinion to Claimant's rehabilitation physician.

Claimant did not offer any testimony or reports from his rehabilitation physician and neither party presented other medical witnesses.

The referee accepted the physicians' testimonies and found Claimant totally disabled from March 27, 1991 through February 6, 1992. The referee then terminated benefits effective February 7, 1992 because Claimant's medical experts could not unequivocally establish a continuing disability after that date.

Both parties appealed. The Board held that Claimant presented unequivocal medical testimony supporting the existence of a work-related disability. However, the Board determined that the referee erred in placing the burden on Claimant to prove continuing disability and that, once Claimant established entitlement to benefits, the burden should have been on Petitioners to prove that Claimant had fully recovered from his disability. Because Petitioners failed to do so, the Board concluded that the referee improperly terminated benefits.

Petitioners now ask[3] us to determine: (1) whether Claimant's medical evidence is unequivocal, thereby supporting a

3. Our scope of review of an administrative agency decision is to determine whether there has been a constitutional violation or an error of law and whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2

finding of causation between Claimant's work-related incident and his disability; and (2) whether Claimant may receive benefits following the justifiable termination of his employment.

## I.

Petitioners first argue that the testimony of Claimant's medical witnesses was equivocal and, thus, could not provide the required causal link between the work-related incident and Claimant's disability.

In a claim petition proceeding, a claimant must prove a causal relationship between a work-related incident and a disability. *Lewis v. Workmen's Compensation Appeal Board (Pittsburgh Bd. of Educ.)*, 508 Pa. 360, 498 A.2d 800 (1985). Where, as here, an obvious causal connection between the disability and the alleged cause does not exist,[4] the claimant can establish that connection through unequivocal medical testimony. *Id.* If such testimony is necessary, a claimant's medical witnesses must testify that in their professional opinions, the disability resulted from the alleged cause, not that the injury "may have" resulted from the alleged cause. *Id.* If the testimony is based only upon possibilities, then that testimony is equivocal and not legally competent to establish a causal relationship. *Id.*

The determination as to whether expert testimony in a workers' compensation proceeding is equivocal so as not to be competent evidence is a question of law, subject to our review. *Cyclops Corp./Sawhill Tubular Div. v. Workmen's Compensation Appeal Board (Paulsen)*, 158 Pa.Commonwealth Ct. 595, 632 A.2d 617 (1993). "In conducting such review the medical

Pa.C.S. § 704; *Pittsburgh Board of Education v. Workmen's Compensation Appeal Board (Perkins)*, 108 Pa.Commonwealth Ct. 361, 529 A.2d 1166 (1987).

4. In light of his previous back pain, an obvious causal connection does not exist between Claimant's work-related incident and his injury. *See McGarry v. Workmen's Compensation Appeal Board (Morrissey)*, 146 Pa.Commonwealth Ct. 594, 606 A.2d 648 (1992), *appeal denied*, 533 Pa. 620, 619 A.2d 701 (1993).

witness's entire testimony must be reviewed and taken as a whole and a final decision 'should not rest upon a few words taken out of context of the entire testimony.' " *Lewis,* 508 Pa. at 366, 498 A.2d at 803, quoting *Wilkes–Barre City v. Workmen's Compensation Appeal Board,* 54 Pa.Commonwealth Ct. 230, 420 A.2d 795 (1980).

First, Petitioners argue that Dr. Yaros testified as to possibilities, specifically that the alleged incident "may have caused" Claimant's injury or "could have aggravated" a pre-existing condition. We agree.

■ Here, Dr. Yaros testified that, within a reasonable degree of medical certainty, Claimant's disability commenced on April 1, 1991; however, Dr. Yaros never stated unequivocally that the incident of March 26, 1991 caused Claimant's back pain. At most, Dr. Yaros' testimony, when taken in its entirety, establishes that "something" aggravated Claimant's pre-existing back condition which *could* have been the work-related incident here.[5] Therefore, we disagree with the Board's determination that Dr. Yaros' testimony was unequivocal.

Petitioners also maintain that Dr. Gendell's testimony is equivocal because: (1) it is premised on the assumption that the "history" given to him was accurate, and (2) it is inconsistent. Here, we disagree.

5. Dr. Yaros testified that "[t]he herniated disc certainly would be— *could be* consistent with a lifting incident." (R.R. at 223A) (emphasis added). However, Dr. Yaros noted that Claimant had pre-existing pain for two months and believed "that something occurred *in 1–91* to cause the marked change in [Claimant's] symptomatology." (R.R. at 222A, 241A.) (Emphasis added.) Furthermore, when asked if the symptomatology was related to Claimant's earlier back problems, Dr. Yaros answered:

A. I don't *think* so.
Q. Was that ever considered a possibility by you?
A. I would say, yes, only in that the first entry on 3–27–91 states that this man had a history of low back pain in the past which to me indicates I was aware of that in evaluating him on this date. I had that in my mind on this date.
(R.R. at 242A.) (Emphasis added.)

86

██ . Dr. Gendell did base his medical opinion on the medical history provided by Claimant, stating that assuming the "history" he received as true, the work-related incident here either aggravated Claimant's pre-existing back condition or caused a new injury. (R.R. at 295A.) Contrary to Petitioner's argument, medical causation testimony is not rendered equivocal because it is based on the medical expert's assumption of the truthfulness of the information provided; however, the supposed facts forming the basis of that determination must be proven by competent evidence and accepted as true by the referee. *McGraw–Edison/Power Systems Div. v. Workmen's Compensation Appeal Board,* 62 Pa.Commonwealth Ct. 302, 436 A.2d 706 (1981).

Here, the referee found that Claimant injured himself on March 26, 1991 due to a work-related incident. That finding is supported by competent evidence within the record. (*E.g.,* R.R. at 27A–28A.)[6] Furthermore, the referee found Dr. Gendell's testimony to be credible.

Petitioners, however, note that Dr. Gendell's conclusion that within reasonable medical certainty the work-related incident either aggravated a pre-existing back condition or had caused a new injury is inconsistent with portions of his testimony in

6. Claimant testified as follows:

Q. Now, on March 26th, 1991, what task were you performing at work?
A. I was putting a water and an oil separator tank together.
Q. Okay. And on that day did you suffer an injury?
A. Yes.
Q. Would you explain how this injury occurred?
A. Me and another fellow was putting the cone together of the bottom of the water and oil separator and I was using the bar to pry with and he was tack welding it while I was prying with the bar and the bar slipped and I slipped with it.
Q. Okay. And you stated you were working with somebody. What was this gentleman's name?
A. Keith Hetrick.
. . . .
Q. When this injury occurred, what part of your body did you injure?
A. The lower back.
Q. And what did you feel?
A. It felt like a real sharp burning pain going down my left leg.
(R.R. at 27A–28A.)

which he stated that the alleged incident *could* cause the Claimant's present symptoms.[7]

■ "The rationalization of a witness' testimony and the acceptance of those portions thereof on which to make findings and an award is the province of the referee, and is not a review prerogative of this Court." *Blue Bell Printing v. Workmen's Compensation Appeal Board (Montgomery Publishing Co.)*, 115 Pa.Commonwealth Ct. 203, 207, 539 A.2d 933, 935 (1988). The appearance of inconsistencies in a medical expert's testimony does not render that testimony equivocal. *Wetterau, Inc. v. Workmen's Compensation Appeal Board (Mihaljevich)*, 148 Pa.Commonwealth Ct. 55, 61, 609 A.2d 858, 861 (1992). In fact, Dr. Gendell never contradicted himself by testifying that the work-related incident did not cause Claimant's disability. When taken as a whole, Dr. Gendell's testimony indicates that within a reasonable degree of medical certainty the incident caused a new injury or an aggravation of a pre-existing condition. Thus, Claimant presented unequivocal medical testimony of causation.[8]

7. Petitioners focus on the following testimony:
A. "... So, you know, this incident may have worsened the disc being out of place, but certainly if we are suspecting that the leg discomfort is secondary to the disc out of place and there's some irritation on the nerve, then that leg pain that he had for two months may very well have been secondary to some degree of pressure at least over the two month period.
Q. Would an incident such as the one he indicated, would that aggravate the preexisting disc condition?
A. It could.
....
Q. Would trauma intensify a pre-existing condition?
A. It could.
Q. The fact that [Claimant] was working during this period of time, does that have any input in your opinion that this was an aggravation or made the condition worse?
A. It could certainly aggravate it or make it worse.
(R.R. at 283A–84A.)

8. Although one of Claimant's experts presented equivocal testimony, that does not preclude a finding of casual connection as long as other unequivocal medical testimony exists that has been accepted by the referee. *Cf. Malocheski v. Consolidated Cigar Corp.*, 12 Pa.Commonwealth Ct. 430, 316 A.2d 81 (1974) (Claimant presented the testimony of two medical experts, only one of which unequivocally established a

## II.

Next, Petitioners argue that the Board inappropriately affirmed the referee's award of benefits because Claimant's loss of earnings since March 28, 1991 resulted from Claimant's justifiable discharge for disregarding company policy and was not the result of a work-related injury.

In *United Parcel Service v. Workmen's Compensation Appeal Board (Portanova)*, 140 Pa.Commonwealth Ct. 626, 594 A.2d 829 (1991), we held that when a claimant is discharged because of misconduct which occurred prior to his injury, the claimant's loss of earnings is deemed to have resulted from disability due to injury. However, if a claimant commits misconduct after the injury and is properly discharged for that conduct, then he is precluded from receiving compensation for loss of earnings from the date of his termination. *See Wells–Moore v. Workmen's Compensation Appeal Board (McNeil Consumer Products Co.)*, 144 Pa.Commonwealth Ct. 382, 601 A.2d 879 (1992); *see also Woodard v. Workmen's Compensation Appeal Board (Koppers)* 49 Pa.Commonwealth Ct. 558, 411 A.2d 890 (1980).

Here, the referee found that Claimant's injury occurred prior to the termination of his employment. Therefore, Claimant's loss of earnings resulted from a disability due to an injury [9] which consequently entitled him to benefits as of March 27, 1991. However, on March 28, 1991, Employer justifiably terminated Claimant's employment because of Claimant's history of misconduct, with the last event occurring after the injury. Thus, Claimant's loss of earnings beginning March 28, 1991 resulted from his discharge and his compensation for loss of earnings should have been suspended on that date. Moreover, that suspension should have continued for the period of his disability.

causal connection between Claimant's condition and the alleged accident).

9. For workmen's compensation purposes, "disability" is equated with a loss of earning power. *Odd Fellow's Home of Pennsylvania v. Workmen's Compensation Appeal Board (Cook)*, 144 Pa.Commonwealth Ct. 280, 601 A.2d 465 (1991).

As to the length of Claimant's disability, Petitioners note that the Board erred by reversing the referee's termination of benefits as of February 7, 1992 and placing the burden of disproving Claimant's continuing disability with Petitioners. We agree.

A referee can determine the period of a claimant's disability and award benefits accordingly even though the employer has not filed a termination petition. *Thomas v. Workmen's Compensation Appeal Board (George's Painting Contractors)*, 157 Pa.Commonwealth Ct. 207, 629 A.2d 251 (1993). Moreover, the burden of proof remains with the claimant to demonstrate not only that he has sustained a compensable injury but also that the injury continues to cause disability throughout the pendency of the claim petition proceeding. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 535 Pa. 135, 634 A.2d 592 (1993); *Innovative Spaces v. Workmen's Compensation Appeal Board (DeAngelis)*, 166 Pa.Commonwealth Ct. 141, 646 A.2d 51 (1994).

After February 6, 1992, Claimant failed to meet that burden because he did not produce unequivocal medical opinion that his disability continued after that date. (Referee's Finding of Fact, Nos. 13, 14, and 15.) Thus, the referee properly terminated benefits as of February 7, 1992.

Accordingly, Claimant is entitled to full benefits for March 27, 1991 [10] and medical expenses incurred from March 27, 1991 through February 6, 1992, although he is not entitled to compensation for loss of earnings from March 28, 1991 through February 6, 1992. 77 P.S. § 514; *see Odd Fellow's Home of Pennsylvania v. Workmen's Compensation Appeal Board (Cook)*, 144 Pa.Commonwealth Ct. 280, 601 A.2d 465 (1991). Moreover, Claimant's benefits are terminated as of February 7, 1992. Therefore, we affirm the Board's order as to Claimant's entitlement to benefits, reverse the order as to

10. Although Claimant is entitled to loss of earning compensation for one day, that amount of time is insufficient for him to actually collect those benefits. *Ruhl v. Workmen's Compensation Appeal Board (Mac–It Parts, Inc.)*, 148 Pa.Commonwealth Ct. 294, 611 A.2d 327 (1992), *appeal denied*, 533 Pa. 620, 619 A.2d 701 (1993).

the termination of benefits, vacate as to the period of entitlement and remand the case to the Board for computation of benefits consistent with this opinion.

## ORDER

AND NOW, this *11th* day of *October*, 1994, the order of the Workmen's Compensation Appeal Board, entered November 29, 1993, at A 93–0490, is affirmed as to Claimant's entitlement to benefits, reversed as to the termination of benefits, and vacated as to the period of entitlement. Accordingly, we remand this case to the Board for computation of benefits consistent with this opinion.

Jurisdiction relinquished.

SMITH, Judge, dissenting.

I dissent from the majority decision to affirm the Workmen's Compensation Appeal Board's order as to Claimant's entitlement to benefits. Claimant has not demonstrated by unequivocal medical expert testimony that his claimed injuries were work-related or that they were caused by an incident on March 26, 1991. Even the referee conceded that there was "much confusion" in the doctors' testimony relative to the history of a specific work incident. To establish causation where there is no obvious causal connection between an injury and the work place, a claimant must produce unequivocal medical testimony to establish that connection. *Cardyn v. Workmen's Compensation Appeal Board (Heppenstall)*, 517 Pa. 98, 534 A.2d 1389 (1987); *Borough of Media v. Workmen's Compensation Appeal Board (Dorsey)*, 134 Pa.Commonwealth Ct. 573, 580 A.2d 431 (1990).

In determining the legal sufficiency of medical testimony, this Court must determine whether the expert has testified that the complained of condition in the expert's opinion did result from the alleged cause. A less direct expression of opinion fails to satisfy the standard of proof and does not constitute legally competent evidence. *Cardyn; Lewis v. Commonwealth*, 508 Pa. 360, 498 A.2d 800 (1985).

The majority does recognize that the testimony of one of Claimant's medical witnesses, Dr. Yaros, is equivocal and disagrees with the Board in this respect. However, the other medical witness, Dr. Gendell, treated Claimant on referral by Dr. Yaros and relied upon his information. Dr. Yaros repeatedly testified that Claimant gave no history during the initial office exam on March 27, 1991 of a specific work incident occurring the day before on March 26, 1991; Dr. Yaros' nurse also took a history from Claimant who stated that his low back pain began a few months ago after his prescription for pain medication ran out; Dr. Yaros did not know if Claimant's earlier back problems caused the present complaints; and his symptoms which were consistent with a herniated disc began two months prior to the initial exam date.

Dr. Gendell testified that he examined Claimant in April 1991 and that Claimant related a history of back and leg discomfort. The doctor had no specific recollection of a work incident nor did his office notes indicate a work incident; he learned from subsequent histories about a work incident involving Claimant's use of a prybar at work; and he was unaware until the date of his deposition that Claimant had a previous history of back problems "apparently a few months" before March 1991. The doctor also stated when presented with a hypothetical that he would have no ability to render an opinion about the cause of a person's back and leg discomfort assuming an absence of a history of a specific industrial accident, history of low back pain and radicular pain a few months before March 1991, an office visit a few months after the Claimant's prescription for pain medication ran out, and a history of taking medication for low back pain prior to March 1991.

In *Lewis*, the Court stated that expert testimony must be viewed as a whole to determine whether it represents an unequivocal statement as to causation, and if the medical expert's testimony is less than positive or is based on possibilities, it is not unequivocal. *See also Cyclops Corp./Sawhill Tubular Div. v. Workmen's Compensation Appeal Board*

*(Paulsen)*, 158 Pa.Commonwealth Ct. 595, 632 A.2d 617 (1993). Examining the medical witnesses' testimony as a whole, and without taking "a few words out of context," it is apparent that the testimony does not express the unequivocality required to constitute competent evidence as to causation. The doctors used statements that were less than positive, i.e., Claimant's injury could have been caused by the incident, was possibly aggravated by the injury, could have aggravated a pre-existing condition; and something occurred in January 1991 to cause the change in Claimant's symptoms of back and leg pain dating back to 1988. This record does not support a claim for benefits.