UPMC Pinnacle Hospitals,     :
          Petitioner     :
     :
     v.     :
     :
Renee Orlandi (Workers'     :
Compensation Appeal Board),     :  No. 596 C.D. 2022
          Respondent     :  Submitted: February 3, 2023

BEFORE:   HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE ELLEN CEISLER, Judge
          HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON       FILED: July 21, 2023

UPMC Pinnacle Hospitals (Employer) petitions for review of the May 13, 2022, order of the Workers' Compensation Appeal Board (Board), which modified in part, reversed in part, and otherwise affirmed a December 14, 2021, order of the Workers' Compensation Judge (WCJ) in this matter. The WCJ's order denied Employer's termination petition and granted a review petition filed by Renee Orlandi (Claimant). The Board affirmed the WCJ's denial of the termination petition, reversed the WCJ's grant of the review petition to the extent that it erroneously added a supraspinatus left shoulder tear to the description of Claimant's work injury, modified the WCJ's description of injury to correctly reflect the evidence, and modified the WCJ's order to reflect the WCJ's intent to award

Claimant temporary total disability benefits beginning on April 14, 2021. Upon review, we affirm the Board's order.

## I. Background

On August 6, 2019, Claimant sustained a work-related injury. Reproduced Record (R.R.) at 1a. On September 24, 2019, Employer issued a medical-only Notice of Temporary Compensation Payable (NTCP) accepting a left shoulder sprain "from scanning patients." *Id*. On October 12, 2020, Employer filed a termination petition asserting that Claimant fully recovered from her injuries as of a June 23, 2020, independent medical examination (IME). *Id*. at 3a. On October 22, 2020, Claimant filed a review petition seeking to expand the description of injury to include "left shoulder supraspinatus tear, cervical strain and cervical radiculopathy." *Id*. at 6a. This litigation ensued.

Claimant testified in a deposition on November 17, 2020. R.R. at 9a. She worked for Employer as a registered vascular ultrasound technologist. *Id*. at 16a-17a. She used her left arm to operate the machine and her right arm to perform compressions on patients; she did these tests 7-9 times per day. *Id*. at 18a. While working on her last patient of the day on August 6, 2019, she felt pain from the left side of her neck down to her trapezius, deltoid muscle areas, and left arm. *Id*. at 19a. She went the next day to an orthopedic walk-in clinic and was given prednisone; she missed a few days of work. *Id*. at 20a. Upon her return, her managers agreed to transfer her to another location where she did not have to do as many scans. *Id*. at 21a. She treated conservatively with chiropractic care and physical therapy and underwent MRI and EMG exams. *Id*. at 23a. She continued working at the same pay rate, but had ongoing pain from her scanning duties, which she reported to her

2

supervisors. *Id.* at 24a & 28a. As of the date of her deposition, she was on restrictions limiting lifting, pushing, and pulling, but still had pain. *Id.* at 28a.

Claimant acknowledged having received treatment on her left shoulder in February 2019, six months before the injury at issue. R.R. at 28a. At that time, she received an injection from Employer's doctors and was able to resume full duty full time work until the injury at issue in August 2019; this previous treatment had been handled as a workers' compensation matter. *Id.* at 29a. She also recalled having some bilateral shoulder pain on both sides in the 1990s that resolved with over-the-counter supplements. *Id.* at 29a-30a. She stated she did not have neck pain or treatment prior to August 2019. *Id.* at 36a.

At the time of her deposition, Claimant felt pain and stiffness from her ongoing work duties in the left side of her back at the trapezius muscles, over her left scapula area, and in her left shoulder. R.R. at 32a & 46a. Overall, however, her condition had improved from a 6/10 pain level to 3/10. *Id.* at 44a-45a. She stated that she used to ride horses and still owned a horse, but did not ride it as of the time of her deposition. *Id.* at 47a.

Claimant testified at a second deposition on May 10, 2021. R.R. at 62a. She had worked mostly full duty and in pain until undergoing neck surgery on April 14, 2021, and had not yet returned to work as she was still healing. *Id.* at 69a-70a. She had hoped to avoid surgery, but conservative measures had not helped. *Id.* at 71a. She was about to start physical therapy and had begun receiving Employer-funded short-term disability payments at 40% of her regular pay, which was $29.61 per hour at 40 hours per week. *Id.* at 72a & 81a. Since the surgery, her neck felt much better, but she still had left arm weakness and pain. *Id.* at 74a. She took Percocet, Zanaflex, and a steroid after the surgery and was taking Meloxicam (an

anti-inflammatory) and Gabapentin for nerve pain. *Id*. at 75a. Since her previous deposition but before her surgery, she rode her horse occasionally with a horse trainer's assistance at slow speeds for short periods of time (up to 10 minutes), but had not done so since the surgery. *Id*. at 77a & 82a. She intended to return to full duty work once she was released to do so.[1] *Id*. at 79a & 83a.

Claimant's treating orthopedic surgeon, Dr. Tyson Maugle, D.O., testified in a March 29, 2021, deposition. When he first saw Claimant in December 2019, she reported experiencing pain since August 2019 in the left side of her neck radiating into the left shoulder and arm. R.R. at 135a. She told him that her work required her to turn her neck in ways that exacerbated her pain. *Id*. He took x-rays that showed degenerative conditions at C5-6, and he also detected left side cervical and arm radiculopathy; he initially attributed her condition to degenerative changes, but also believed that her work duties "contributed to her symptoms." *Id*. at 138a-39a. He concluded that her left shoulder issues were due to referred pain from her cervical condition. *Id*. at 141a. She underwent a cervical MRI later in December 2019 that was consistent with mild degenerative changes. *Id*. at 142a & 144a.

Dr. Maugle stated that at subsequent visits, Claimant continued to report pain when doing her work duties. R.R. at 143a & 148a. As of his March 2021, deposition, Claimant's radiculopathy had not improved with conservative treatment, and she had decided to undergo surgery. *Id*. at 149a-50a. She would have to stop working for the surgery and to heal afterwards; he thought she could return to full duty about three months after the surgery. *Id*. at 154a & 167a. Dr. Maugle's ultimate diagnosis was cervical degenerative disc disease at C5-6 and C6-7 with

---

[1] According to Employer's brief, Claimant returned to work on or about July 11, 2021. Employer's Br. at 8 n.1.

bilateral foraminal stenosis at C5-6 and left side foraminal stenosis at C6-7 with left upper arm cervical radiculopathy. *Id*. at 150a-51a. Based on Claimant's reports to him about her work duties and pain when repeatedly turning her neck while doing her job, he related her diagnosis and clinical presentation to her work-related activity. *Id*. at 151a-52a & 156a-57a.

During cross-examination, Dr. Maugle acknowledged that his conclusions as to causation depended on the veracity and accuracy of the history Claimant reported to him and that she had not told him about any prior left shoulder or neck issues. R.R. at 160a & 166a-67a. He had not discussed causation in his contemporary medical notes. *Id*. at 161a. He conceded that Claimant's diagnostics showed no acute findings and that her degenerative conditions are common at the C5-6 and C6-7 levels and could cause pain with certain maneuvers of the neck. *Id*. at 162a-64a. Her horseback riding could also cause symptoms. *Id*.

Employer's medical expert, Dr. Lawrence Pollack, D.O., an orthopedic surgeon, testified in a February 25, 2021, deposition. He saw Claimant for an IME on June 23, 2020. R.R. at 92a. Claimant told him of past left shoulder pain in early 2019 with numbness, tingling, and a "buzzing sensation" that was treated with chiropractic care and an injection. *Id*. at 92a. She told him that on August 6, 2019, while working regular duty, she was performing a scan on a patient when she felt left shoulder and left cervical spine pain. *Id*. He read her medical records from her initial treatment for that injury beginning three days later; she reported in those records that her pain flared up from working. *Id*. at 93a. He noted in the records that after the August 2019 incident, she reported a "buzzing sensation" in her left arm as she had earlier that year. *Id*. at 95a.

5

Dr. Pollack agreed with Dr. Maugle that "the source of [Claimant's] issue is cervical spine." R.R. at 96a. He disagreed, however, that her condition was more serious and ultimately concluded that she sustained "at most" a left shoulder and cervical strain from her work duties that had fully resolved by the June 2020 IME. *Id*. at 94a-96a & 98a. To the extent she continued to feel symptoms, Dr. Pollack attributed these to her underlying degenerative conditions. *Id*. at 98a.

At a hearing on April 27, 2021, Claimant's counsel advised the WCJ and Employer's counsel that Claimant had taken time off work to undergo surgery. Certified Record (C.R.) at 88.[2] The WCJ stated that both doctors' depositions had been submitted into evidence along with Claimant's prior and upcoming depositions on May 10, 2021. *Id*. at 87. When asked by the WCJ if anything further would be added to the record, Employer's counsel stated that other than a statement of wages, he did not believe so, and he reiterated this several minutes later. *Id*. at 88-89. The WCJ did not expressly close the record but advised the parties that they would have 60 days from the hearing date to complete Claimant's second deposition and submit briefs on their respective petitions. *Id*. at 88. As noted above, Claimant's second deposition took place on May 10, 2021.

June 27, 2021, was 60 days from the April 27, 2021, hearing. The reproduced record prepared by Employer in association with this appeal includes a July 7, 2021, letter by Employer's counsel to the WCJ; the letter lists Employer's objections to Dr. Maugle's deposition testimony.[3] R.R. at 191a. The letter adds that Claimant's counsel "has no objection to the timing of this request" and thanks the

---

[2] References to the Certified Record are to electronic pagination.

[3] Employer's Counsel objected to certain questions on causation as leading and "asked and answered." R.R. at 139a & 151a-52a.

WCJ for his "kind attention to this request." *Id*. The letter indicates "VIA WCAIS"[4] at the top. *Id*. However, the letter does not include proof of filing in the WCAIS system and does not appear in the certified record or in the listing of exhibits in the WCJ's December 14, 2021, decision on this matter. *See id*. at 193a; *see also generally* C.R.

The WCJ's decision credited Claimant's testimony as clear, concise, logical, and consistent with both the medical records and Dr. Maugle's testimony. R.R. at 196a. The WCJ credited Dr. Maugle's testimony for the same reasons, as well as because Dr. Maugle was Claimant's treating doctor. *Id*. at 197a. The WCJ did not credit Dr. Pollack's testimony as it contradicted that of Claimant and Dr. Maugle. *Id*. at 195a. The WCJ granted Claimant's review petition because she had established that her work-related injury description should be expanded to include "left shoulder supraspinatus tear, cervical strain, and cervical radiculopathy," which is how Claimant phrased her injury in her review petition. *Id*. at 197a; *see also id*. at 6a. The WCJ denied Employer's termination petition because it had not shown that Claimant fully recovered from her work-related injury. *Id*. The WCJ's decision did not expressly award wage loss benefits to Claimant as of April 14, 2021, when she went out of work for her surgery, but did state in the order that "Employer is ordered to deduct 20% from the Claimant's compensation and pay same to Claimant's counsel. The remainder of Claimant's compensation is to be paid directly to the Claimant." *Id*. at 199a.

Both sides appealed to the Board, which issued a May 13, 2022, decision and order. R.R. at 206a-22a. The Board reversed the WCJ's inclusion of

---

[4] WCAIS is a web-based system for workers' compensation claims management and adjudication. Parties use it to file petitions, applications, forms, exhibits, and other documents online with the Bureau of Workers' Compensation, the Workers' Compensation Office of Adjudication, and the Board.

a supraspinatus left shoulder tear in the expanded description of injury and modified the description of injury from the "cervical strain and cervical radiculopathy" in the WCJ's decision to "cervical strain, left shoulder strain or tear, and cervical degenerative disc disease at C5-C6 and C6-C7, bilateral foraminal stenosis at C5-C6, and left sided foraminal stenosis at C6-C7, and left upper extremity cervical radiculopathy," which was consistent with Dr. Maugle's diagnosis.[5] *Id*. at 222a; *see also id*. at 150a-51a. The Board noted that Employer's objections to Dr. Maugle's causation testimony may have been waived and, in any event, were meritless because that testimony was consistent and unequivocal that Claimant's condition was related to her work duties. *Id*. at 220. In the alternative, the Board noted that even if the WCJ erred in accepting Dr. Maugle's testimony, it would be harmless error since Claimant's testimony relating her condition to her work duties was also found credible and "an exacerbation of her cervical issues was an obvious injury." *Id*. Finally, the Board noted that even though the WCJ had not expressly awarded Claimant wage loss benefits in his decision, the order's language indicated that the WCJ clearly intended to do so as of when she went out of work on April 14, 2021, for her surgery. *Id*. at 212a. Employer petitioned for review in this Court.

## II. Issues

Employer raises three claims to this Court.[6] Employer first asserts that the Board erred by affirming the WCJ Decision expanding the description of

---

[5] Claimant has not appealed any aspect of the Board's decision, which stated that "Dr. Maugle did not testify that the supraspinatus left shoulder tear was work-related and that Claimant conceded that that injury was not work-related." R.R. at 217a.

[6] This Court's scope of review is limited to determining whether the WCJ's necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or

Claimant's work injury to include work-related cervical conditions because Dr. Maugle's causation testimony was equivocal and therefore incompetent. *See* Employer's Br. at 18-26. Second, Employer claims the Board erred by failing to rule on its objections. *See id.* at 26-32. Third, Employer argues that the Board erred by interpreting the WCJ's order as intending to award Claimant wage loss benefits from the date of the surgery on April 14, 2021. *See id.* at 32-34.

## III. Discussion

### A. Claimant's Doctor's Causation Testimony

When a claimant files a review petition seeking to expand an accepted description of a work injury, the claimant must show that the asserted additional injuries are causally related to the work injury. *Degraw v. Workers' Comp. Appeal Bd. (Redner's Warehouse Mkts., Inc.)*, 926 A.2d 997, 1000 (Pa. Cmwlth. 2007). In this regard,

> [a] claimant bears the burden of presenting unequivocal medical testimony to establish the causal link between a work incident and a disability when such a causal link is not obvious, and the causal link is not obvious if a claimant has a pre-existing condition related to the same body part the claimant alleges was injured at work. The question is one of law and is fully reviewable. In reviewing medical testimony, the testimony *must be examined as a whole*.

whether constitutional rights were violated. *Russell v. Workmen's Comp. Appeal Bd. (Volkswagen of America)*, 550 A.2d 1364, 1365 (Pa. Cmwlth. 1988). On appeal, the prevailing party is entitled to the benefit of the most favorable inferences to be drawn from the evidence. *Fulton v. Workers' Comp. Appeal Bd. (Sch. Dist. of Phila.)*, 707 A.2d 579, 582 (Pa. Cmwlth. 1998). The appellate role in a workers' compensation case is not to reweigh the evidence or review the credibility of the witnesses; rather, the Board or reviewing court must simply determine whether, upon consideration of the evidence as a whole, the WCJ's findings have the requisite measure of support in the record. *Bethenergy Mines, Inc. v. Workmen's Comp. Appeal Bd. (Skirpan)*, 612 A.2d 434 (Pa. 1992).

9

*Moyer v. Workers' Comp. Appeal Bd. (Pocono Mountain Sch. Dist.)*, 976 A.2d 597, 599 n.3 (Pa. Cmwlth. 2009) (internal citation omitted; emphasis in original). This Court has explained:

> The question of whether expert medical testimony is unequivocal, and, thus, competent evidence to support factual determinations is a question of law subject to our review. In such cases, we review the testimony as a whole and may not base our analysis on a few words taken out of context. Taking a medical expert's testimony as a whole, it will be found to be equivocal if it is based only upon possibilities, is vague, and leaves doubt. Medical testimony is unequivocal if a medical expert testifies, after providing foundation for the testimony, that, in his professional opinion, he believes or thinks a fact exists.

*Amandeo v. Workers' Comp. Appeal Bd. (Conagra Foods)*, 37 A.3d 72, 80 (Pa. Cmwlth. 2012) (internal citations, quotation marks, and brackets omitted). "Medical testimony is equivocal if it is less than positive or merely based upon possibilities." *Potere v. Workers' Comp. Appeal Bd. (Kemcorp)*, 21 A.3d 684, 690 (Pa. Cmwlth. 2011) (citing *Lewis v. Workmen's Comp. Appeal Bd.,* 498 A.2d 800 (Pa. 1985)).

However, "there are no magic words that a doctor must recite to establish causation." *Campbell v. Workers' Comp. Appeal Bd. (Pittsburgh Post Gazette)*, 954 A.2d 726, 730 (Pa. Cmwlth. 2008). "There is no requirement that every utterance that escapes the lips of a medical witness on a medical subject must be certain, positive, and without reservation, exception, or p[e]radventure of a doubt in order to be considered unequivocal." *Id.* "Moreover, it is not necessary that the claimant's medical expert rule out with absolute certainty other factors that may have caused or contributed to a condition." *Id.*

Additionally, if a medical expert's opinion is based on certain assumptions, the potential inaccuracy of those assumptions will not render the

expert's opinion equivocal and incompetent if the expert's opinion is supported by the medical record. In *Somerset Welding and Steel v. Workmen's Compensation Appeal Board (Lee)*, 650 A.2d 114 (Pa. Cmwlth. 1994), the treating doctor stated that he assumed the medical history provided by the claimant was true and accurate when he assigned causation of the claimant's condition to a work incident. *Id.* at 118. To the extent that assumption was incorrect, this Court concluded that the doctor's causation testimony was nevertheless competent and unequivocal: "medical causation testimony is not rendered equivocal because it is based on the medical expert's assumption of the truthfulness of the information provided; however, the supposed facts forming the basis of that determination must be proven by competent evidence and accepted as true by the [WCJ]." *Id.* In *Somerset Welding*, the medical record included competent evidence that the actual injury occurred as described by the claimant, and therefore the doctor's causation testimony was deemed competent. *Id.* at 118-19.

In *Moyer*, the claimant had preexisting back issues but was performing his full and usual work duties when he sustained a back injury after an incident and could not work afterwards. 976 A.2d at 598-99. The treating doctor, who had seen claimant previously for his back issues, assumed the incident was the cause of the claimant's disability. *Id.* at 600. We deemed the doctor's testimony competent because it was not solely based on his assumption but was ultimately supported by "the fact that there was a definite and documented injury at work requiring hospital treatment as well as corroborating medical documents that [the c]laimant had indeed suffered an injury while lifting a heavy object and had sought emergency treatment." *Id.* The doctor's causation opinion was valid because it was "not based on an assumption that [the c]laimant's injuries *could* cause such results, but rather, that if

11

the accident occurred as [the c]laimant described it, then it *was* the cause of those results." *Id*. (emphasis in original). In essence, the doctor's opinion was competent because it was not based on an assumption, "but rather on a host of factors that led him inescapably to that conclusion." *Id*.

Here, the WCJ credited Dr. Maugle's causation testimony and expanded the description of the work-related injury to include, *inter alia*, work-related cervical radiculopathy. R.R. at 197a. The Board concluded that, taken as a whole, Dr. Maugle's testimony regarding causation was unequivocal and consistent. *Id*. at 220a. Employer argues that Dr. Maugle's causation testimony was contradictory and equivocal and, thus, incompetent. Employer's Br. at 18-21 & 25-26 (citing *Potere*). Employer adds that Dr. Maugle's lack of knowledge of Claimant's medical history, including prior symptoms identical to those she reported in August 2019, rendered his testimony incompetent. *Id.* at 21-23 (citing *Sw. Airlines/Cambridge Integrated Serv. v. Workers' Comp. Appeal Bd. (King)*, 985 A.2d 280 (Pa. Cmwlth. 2009)). Claimant responds that the WCJ's expansion of the description of injury was proper and therefore the Board did not err in affirming. Claimant's Br. at 8-10.

In his deposition, Dr. Maugle stated that when he first saw Claimant, he initially attributed her condition to degenerative changes. R.R. at 138a. However, based on her description of how she specifically felt pain when she had to turn her neck repeatedly to do her work duties, he added that "I did believe those contributed to her symptoms." *Id*. at 139a; *see also* 135a, 143a & 148a. He then reiterated that he related her diagnosis and reported symptoms "to her work-related activity around August of 2019"; agreed when asked if "her clinical presentation is related to the

12

way she described she performs her work duties"; and restated that he attributed her condition to "her work-related injury in August of 2019." *Id*. at 151a-52a & 157a.

On the other hand, during cross-examination, Dr. Maugle acknowledged the possibility that Claimant's condition and symptoms could be due solely to her underlying degenerative changes, activities of daily living, or riding her horse. *Id*. at 162a-64a. He also conceded that she had not mentioned any prior cervical or left shoulder issues to him and he did not disagree when questioned whether Claimant's work duties were described as only a "contributing factor" to her condition along with her underlying degenerative changes. *Id*. at 167a.

Based on the evidence as a whole, we conclude that Dr. Maugle's causation testimony was competent. Although he conceded the possibility that Claimant's degenerative conditions could become symptomatic in the absence of a specific incident or work-related cause, he consistently related her condition to her work duties, particularly her need to turn her neck repeatedly in order to perform those duties. He did not express uncertainty that her condition was related to her work duties. *Cf. PetSmart, Inc. v. Workers' Comp. Appeal Bd. (Sauter)*, 219 A.3d 703, 707 (Pa. Cmwlth. 2019) (holding doctor's testimony incompetent where he stated that the claimant's symptomatology was of "indeterminate etiology" and that it was his "presumption" that the claimant's diagnosis was work-related). As noted, "magic words" are not required to determine the competency of medical testimony and the bar for unequivocal testimony is not particularly high. *Campbell*, 954 A.2d at 730; *cf. Potere*, 21 A.3d at 691 (holding that contradictory opinions rendered doctor's testimony "less than positive, and, hence, equivocal").

Likewise, although Dr. Maugle stated that he first thought Claimant's condition was solely due to her degenerative changes, his subsequent causation

13

testimony was not contradictory; once he knew of Claimant's work duties, specifically her need to repeatedly turn her neck, he did not opine that any of the other possible causes, such as riding her horse or degenerative changes, were equally or more likely to be the cause than her work duties. *See Campbell*, 954 A.2d at 730. Dr. Maugle's reasonable description of how he went from his first impression that Claimant's condition was due solely to her degenerative changes to his ultimate conclusion that her condition was work-related also distinguishes this case from *Potere*, on which Employer relies. There, the doctor's entire testimony was found to be contradictory, including an opinion that the claimant was able to return to work full duty but, at the same time, also required light duty restrictions. 21 A.3d at 691.

Employer also argues that Dr. Maugle's opinion is incompetent because Claimant had similar symptoms, such as the "buzzing sensation" in her left arm, in early 2019 and then again in August 2019 when she reported the injury at issue here, and did not report the previous left shoulder issues to Dr. Maugle. It is true that "the causal link is not obvious if a claimant has a pre-existing condition related to the same body part the claimant alleges was injured at work." *Moyer*, 976 A.2d at 599 n.3. However, to the extent that Dr. Maugle's causation testimony relied on a belief that Claimant had no prior left shoulder issues, this Court has explained that doctors' assumptions, even if based on incomplete information, will not invalidate their testimony if their conclusions are supported in the record and therefore borne out by other evidence. *Moyer*, 976 A.2d at 600; *Somerset Welding*, 650 A.2d at 118.

Here, the WCJ accepted as credible Claimant's testimony that on August 6, 2019, she sustained pain to the left side of her neck down through her left shoulder to her left arm when performing her work duties. R.R. at 19a. The record reflects that she treated for it the next day and reported it to Employer, which not

14

only accommodated her by transferring her to another location where her workload would be lighter, but accepted the injury, albeit as a left shoulder issue, via a medical-only NTCP. *Id*. at 1a & 20a-21a. Dr. Maugle explained that Claimant's injury was not based in her shoulder, but in her cervical area; this conclusion was shared by Employer's expert and accepted by the WCJ. *Id*. at 96a & 141a. Although Claimant did report similar conditions earlier in 2019 and was treated for them as a shoulder (rather than cervical) condition, at the time of the subject incident on August 6, 2019, she was working full duty and had not reported pain or difficulty or requested accommodations prior to that date.

Employer's reliance on *Southwest Airlines* is misplaced. There, in the context of a claim petition, the claimant alleged a head injury from being hit by a jetway door; based on her account, her treating doctor diagnosed her with post-concussive syndrome. 985 A.2d at 281-83. The claimant testified that she had no prior head injuries or concussion symptoms and had reported no such issues to her treating doctor. *Id*. at 282. However, fact witnesses could not corroborate that an incident occurred, and medical discovery revealed that the claimant also had an extensive history of head issues. *Id*. at 287-88 & n.6. The claimant's diagnostic tests did not reflect a head trauma and the employer's doctor opined that she had not sustained an injury at all or, if anything, only a non-disabling "trivial" injury. *Id*. at 283-85. The WCJ granted the claim petition and the Board affirmed, but this Court reversed, concluding that the claimant's doctor's testimony was incompetent, not because it was equivocal, but because he lacked knowledge of the claimant's extensive history of head issues and there was no other support for the claimant's claim. *Id*. at 287-88.

15

Here, by contrast, there is an accepted injury and Claimant's review petition burden was to establish the greater extent of her injury and its work-relatedness, not to establish a work-related injury in the first place. Although Dr. Maugle did not know specifically of Claimant's early 2019 issues, this does not invalidate his otherwise supported conclusion that her reported, documented, accepted, and medically-treated issues that began on August 6, 2019, were indeed work related. Employer's allegations in this regard are therefore meritless.

## B. Employer's Objections to Dr. Maugle's Causation Testimony

Section 131.101 of the Pennsylvania Worker's Compensation Act[7] (Act) regulations states in relevant part:

> (c) The evidentiary record is closed when the parties have submitted all of their evidence and rested or when the judge has closed the evidentiary record on a party's motion or the judge's own motion. . . . When the judge determines that the evidentiary record is closed, the judge will notify the parties that the evidentiary record is closed on the record or in writing.

> (d) A party may move to close the evidentiary record and all other parties shall advise the judge within 20 days as to whether the evidentiary record is closed or whether there is additional evidence to be submitted. At the conclusion of the 20-day period, the judge will determine whether the evidentiary record will be closed or will remain open.

> (e) A judge may close the evidentiary record on the judge's own motion even if all parties have not rested when the judge determines that the parties have had reasonable opportunity to present their case, provided that reasonable notice of the closing of the evidentiary record has been given to all parties.

---

[7] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

16

34 Pa. Code § 131.101(c)-(e). Section 131.66(b) of the regulations states that when depositions are conducted,

> [o]bjections shall be made and the basis for the objections stated at the time of the taking of the depositions. Only objections which are identified in a separate writing, *introduced prior to the close of the evidentiary record*, as close of the record is specified in § 131.101(c)--(e) (relating to briefs, findings of fact and close of record), and stating the specific nature of the objections and the pages where they appear in the deposition or the exhibits to which they refer will be preserved for ruling. *Objections not so preserved are waived*.

34 Pa. Code § 131.66(b) (emphasis added). When issues with written objections have arisen, this Court has held that if they do not appear in the certified record, they are waived. *Degraw*, 926 A.2d at 1001 (stating that "[t]here is no list of preserved objections contained in the record. Thus, even if [the c]laimant's counsel objected . . . , those objections would be waived."); *see also Alessandro v. Workers' Comp. Appeal Bd. (Precision Metal Crafters, LLC)*, 972 A.2d 1245, 1248 n.2 (Pa. Cmwlth. 2009) (same).

Employer argues that the WCJ erred in failing to address its objections to Dr. Maugle's causation testimony. Employer's Br. at 27-32. Employer reiterates that this testimony was equivocal and adds that to the extent it was definitive, this was only because it was elicited by Claimant's counsel's leading and repetitive questions. *Id*. Claimant responds that Employer waived its objections because they were never properly submitted to the WCJ for consideration. Claimant's Br. at 11-13.

At the April 27, 2021, hearing, the WCJ stated that both doctors' depositions had been submitted into evidence along with Claimant's initial and upcoming deposition scheduled for May 10, 2021. C.R. at 87. When asked by the

WCJ if anything further would be added to the record, Employer's counsel stated that other than a statement of Claimant's wages, he did not believe so, and he reiterated this several minutes later. *Id*. at 88-89. Although the WCJ did not expressly close the record, he advised the parties that they would have 60 days from the hearing date to complete Claimant's second deposition and submit briefs on their respective petitions. *Id*. at 88.

The 60-day deadline was June 27, 2021. However, the reproduced record prepared by Employer in association with this appeal includes a July 7, 2021, letter by Employer's counsel to the WCJ. R.R. at 191a. The letter lists Employer's objections raised at Dr. Maugle's deposition and indicates "VIA WCAIS" at the top. *Id*. However, the letter does not include proof of filing in the WCAIS system and does not appear in the certified record or in the listing of exhibits in the WCJ's December 14, 2021, decision. *See id*. at 193a; *see also generally* C.R.

The WCJ did not include Employer's objections in the exhibit list at the beginning of his decision and did not address them in the decision. *See* R.R. at 193a-99a. The Board suggested that Employer may have waived its objections, but ultimately concluded that they were meritless and that any error in this regard by the WCJ was harmless because Dr. Maugle's testimony was ultimately deemed credible and persuasive. *Id*. at 219a-20a. We agree.

As noted, Employer's list of objections in its reproduced record does not include proof of filing via WCAIS and is not included in the certified record. *See Degraw*, 926 A.2d at 1001; *Alessandro*, 972 A.2d at 1248 n.2. Moreover, as discussed above, Dr. Maugle's causation testimony was competent, supported by the record, and found credible and persuasive by the WCJ, who would have had discretion to deny Employer's objections had they been properly preserved. *See*

18

*Kimberly Clark Corp. v. Workers' Comp. Appeal Bd. (Bromley)*, 161 A.3d 446, 467 n.26 (Pa. Cmwlth. 2017). Employer's objections are therefore both waived and meritless.

## C. Claimant's Eligibility for Wage Loss Benefits

The second paragraph of Section 413(a) of the Act states in relevant part:

> A [WCJ] may, at any time, modify, reinstate, suspend, or terminate [an NCP] . . . upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased[.]

77 P.S. § 772. It is also "well-established that the form of the petition is not controlling where the facts warrant relief, and that if a claimant is entitled to relief under any section of the Act, his petition will be considered as filed under that section." *City of Phila. v. Workers' Comp. Appeal Bd. (Cospelich)*, 893 A.2d 171, 179-80 (Pa. Cmwlth. 2006) (internal citations and quotation marks omitted). This court has found no error where a WCJ awarded benefits under a provision of the Act different from that under which the petition was filed. *Id.*; *see also Steele v. Workers' Comp. Appeal Bd. (Findlay Twp.)*, 155 A.3d 1173, 1179 (Pa. Cmwlth. 2017) (citing *Cospelich* and *Gen. Refractories Co. v. Workmen's Comp. Appeal Bd. (Wright)*, 635 A.2d 120, 122-23 (Pa. 1993) and noting that "[t]he Pennsylvania Supreme Court has affirmed this practice").

The flexibility of Section 413(a) has also been judicially extended to allow corrections of WCJ decisions, which may be made on a party's petition or *sua sponte* by either the WCJ or the Board. *See Johnson v. Workers' Comp. Appeal Bd. (Budd Co.)*, 693 A.2d 1015, 1017-18 (Pa. Cmwlth. 1997) (holding that "an

19

administrative agency may, on its own motion, correct typographical, clerical and mechanical errors, as well as undisputed factual errors and factual misconceptions, provided proper notice and explanation is given"); *see also Bentley v. Workers' Comp. Appeal Bd. (Pittsburgh Bd. of Educ.)*, 987 A.2d 1223, 1230 (Pa. Cmwlth. 2009) (holding that the Board may correct a "technical error" in a WCJ decision); *Pritchett v. Workers' Comp. Appeal Bd. (Stout)*, 713 A.2d 1214, 1217 & n.3 (Pa. Cmwlth. 1998) (same). However, this does not apply where correction of the alleged error requires a change in the WCJ's factual or legal analysis or additional factual findings or conclusions of law. *Varkey v. Workers' Comp. Appeal Bd. (Cardone Indus. & Fireman Fund)*, 827 A.2d 1267, 1273 (Pa. Cmwlth. 2003); *Butcher v. Workmen's Comp. Appeal Bd. (Treadway Resort Inn)*, 517 A.2d 1023, 1026 (Pa. Cmwlth. 1986).

Here, the WCJ's decision did not expressly award Claimant wage loss benefits. *See* R.R. at 194a-99a. However, the WCJ credited Dr. Maugle's testimony that Claimant's April 2021 surgery, which ultimately took her out of work through July 2021, was due to her accepted work-related injury. *Id.* at 197a. Employer notes that because it issued a medical-only NTCP, Claimant had to file a claim petition seeking wage loss benefits in addition to the review petition to expand the description of injury. Employer's Br. at 32-33. Employer asserts that wage loss benefits were therefore never properly litigated before the WCJ. *Id.* Employer adds that the WCJ's decision did not expressly award wage loss benefits and that the Board could not deduce that intent solely from the language of the WCJ's order. *Id.* Claimant responds that the WCJ accepted Dr. Maugle's attribution of Claimant's surgery and subsequent time out of work to her work injury and that the evidence supported wage loss benefits. Claimant's Br. at 13-15. As such, Claimant avers that

20

the Board was within its authority to correct the WCJ's oversight in failing to formally award wage loss benefits. *Id.*

The WCJ also stated in his order that "Employer is ordered to deduct 20% from the Claimant's compensation and pay same to Claimant's counsel. The remainder of Claimant's compensation is to be paid directly to the Claimant." *Id.* at 199a. The Board acknowledged the lack of clarity in the WCJ's decision, but concluded that the decision and order, read as a whole, indicated that the WCJ intended to award wage loss benefits as of Claimant's April 2021 surgery. *Id.* at 209a-12a. This was primarily because the order would not make sense if it was read to require Employer to pay anything "directly to the Claimant" when all that had previously been accepted by Employer were medical expenses. *Id.*

We recognize that Claimant did not file a claim petition specifically seeking wage loss benefits after she went out of work in April 2021due to her surgery (while her October 2020 review petition was pending) and that the WCJ did not expressly award them to Claimant. This is not the typical typographical or clerical error that the Board usually corrects, such as a date, average weekly wage, or description of injury. *See, e.g., Johnson*, 693 A.2d at 1016 (holding that the Board was authorized to correct a WCJ's misstatement of the claimant's reinstatement date).

However, based on our review of the record, correction of the "error" here does not require a change in the WCJ's factual or legal analysis or additional factual findings or conclusions of law. *Varkey*, 827 A.2d at 1273; *Butcher*, 517 A.2d at 1026. Employer submitted into evidence a statement of wages reflecting Claimant's average weekly wage of $1,361.07. C.R. at 328-29. This amount was higher than Claimant's testimony that she earned $29.61 per hour for a 40-hour

21

workweek ($1,184.40). R.R. at 81a. The statement of wages was included in the list of exhibits in the WCJ's opinion. R.R. at 193a. There was no need, therefore, to litigate wages in this matter. Additionally, Employer was on notice as of Dr. Maugle's March 2021 deposition that Claimant would be undergoing surgery and out of work for a period of time to heal, as well as Dr. Maugle's attribution of the need for the surgery to Claimant's accepted work-related injury. *Id.* at 149a-54a & 167a. Employer was further on notice that Claimant had actually gone out of work after her April 2021 surgery because at the April 27, 2021, hearing, Claimant's counsel informed Employer's counsel and the WCJ; moreover, Claimant confirmed at her May 2021 deposition that she had gone out of work. C.R. at 88; R.R. at 69a-70a.

Although the WCJ's decision and order did not expressly award Claimant post-surgery wage loss benefits other than stating in the order that after a 20% deduction for attorney's fees, the "remainder of Claimant's compensation is to be paid directly to the Claimant," the WCJ did conclude that the surgery was related to her work injury. The record as a whole supports that determination as well as the reasonable inference that Claimant's ensuing three months of disability were also due to her injury. *See Ace Wire Spring & Form Co. v. Workers' Comp. Appeal Bd. (Walshesky)*, 93 A.3d 923, 931 (Pa. Cmwlth. 2014) (holding that the reviewing tribunal or court shall "draw all reasonable inferences which are deducible from the evidence in support of the factfinder's decision in favor of [the] prevailing party"). Therefore, the Board did not err in concluding that the language in the WCJ's order reflected an intent to award wage loss benefits to Claimant for the period she was

22

out of work following her surgery. Employer's argument in this regard is therefore meritless.[8]

## IV. Conclusion

In light of the foregoing discussion, the Board's May 13, 2022, order modifying in part, reversing in part, and otherwise affirming the WCJ's December 14, 2021, order, which denied Employer's termination petition, granted Claimant's review petition, and awarded wage loss benefits as of Claimant's April 14, 2021, surgery is affirmed.

_____
CHRISTINE FIZZANO CANNON, Judge

---

[8] Claimant does not dispute that Employer is entitled to a credit for short-term disability benefits funded by Employer that Claimant received while out of work after her surgery during the litigation of this matter.

23

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

UPMC Pinnacle Hospitals,        :
            Petitioner       :
                              :
                              :
          v.                :
                              :
Renee Orlandi (Workers'     :
Compensation Appeal Board),  :   No. 596 C.D. 2022
            Respondent   :

# O R D E R

AND NOW, this 21st day of July, 2023, the May 13, 2022, order of the Workers' Compensation Appeal Board is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge